136 So.2d 883

**SEARS, ROEBUCK & COMPANY**

v.

**William MORRIS.**

**6 Div. 435.**

Supreme Court of Alabama.

Nov. 2, 1961.

Rehearing Denied Feb. 1, 1962.

Frank M. Young, and Spain, Gillon & Young, Birmingham, for appellant.

Jenkins & Cole, Birmingham, for appellee.

**GOODWYN, Justice.**

This is an appeal by Sears, Roebuck & Company, one of the defendants below, from a judgment of the Circuit Court of Jefferson County rendered on a jury verdict in favor of plaintiff-appellee, William Morris, and also from a judgment over-ruling said defendant's motion for a new trial.

This is a so-called "products liability" case, based on negligence, which appellee brought against Sears, Billy Joe Grogan and XYZ, to recover damages for personal injuries received by him when a metal wheel on a boat trailer "split, disintegrated, and flew apart" while appellee was inflating the innertube in the tire on the wheel at the service station where he was employed.

The defendant XYZ was stricken as a party by appellee.

The trial court gave the affirmative charge in favor of defendant Grogan, which action is not questioned on this appeal.

Appellee received his injuries while working as a repairman at an automobile service station in Talladega when he was placing air in a tire (with innertube) mounted on a metal wheel of a small boat trailer. The trailer was brought to the service station by defendant Grogan to have the tire checked for a leak. In order to remove the tire for checking, it was necessary to disassemble the wheel, which was made of die cast aluminum, consisting of two halves joined together with six removable bolts. The wheel was off the axle when appellee started working on the tire. He removed the six bolts, thus permitting the separation of the two halves of the wheel and the removal of the tire and innertube for checking. Grease covered the surfaces of the halves on the sides where they joined. Since the wheel had not been disassembled prior to this time, it is apparent that the grease was there when the wheel was originally assembled. In addition to the six bolt holes, there were on each half of the wheel two "projections" and two "depressions," also referred to in the testimony as "pimples" and "dimples," their purpose being to prevent the two halves from slipping when bolted together by having the "projections" on one half fit in the "depressions" on the other half. From an examination of a new wheel like the one

involved in this suit, which was introduced in evidence and sent up for our inspection, it is apparent that the six bolt holes in the two halves of the wheel can be matched up without the "projections" being matched with the "depressions." From an examination of the fractured or exploded wheel, also sent up for our examination, and the other evidence, it is apparent that the "projections" were not matched with the "depressions" when the wheel was reassembled by appellee. No instructions were on the wheel as to the manner of assembling it, nor was there any warning of any danger in assembling it and inflating a tire mounted on it without having the "projections" matched with the "depressions."

There were no apparent cracks or fractures in the wheel when appellee took it apart. After disassembling it, appellee checked the innertube for leaks. Finding none, he proceeded to reassemble the wheel. From the evidence, it is not clear whether appellee knew that each half contained "projections" which should be matched with "depressions" on the other half. From an examination of the fractured wheel, it appears that the grease on the two halves partially obscured the presence of the "projections" and "depressions." Appellee testified that he knew how to take the wheel apart and put it back together, but also testified to the effect that the wheel could not be put back wrong "because the holes wouldn't match up." He also gave affirmative answers to the following questions: "Did all the holes match up? Did these little projecting things in there (indicating), were those things together?" After reassembling the wheel with the tire mounted on it, appellee applied the air hose to the valve stem of the innertube and then placed his finger over the valve stem. The wheel then exploded, causing appellee's injury.

The trailer was purchased by one James Hilyer from Sears' retail store in Sylacauga in September, 1953. He sold it to defendant Grogan in the spring of 1955. Hilyer and Grogan had used the trailer frequently, Hilyer having driven it some three to five thousand miles and Grogan from two to three thousand miles. It had been driven at various speeds and over all kinds of roads before the mishap on July 30, 1956. As already noted, the wheel had not been taken apart since its purchase from Sears.

Sears purchased the trailer from Dunbar Kapple, Inc., and sold it under its trade name "Elgin." The wheels on the trailer were purchased by Dunbar Kapple from Kamin Die Casting & Manufacturing Company, located in Chicago.

A decisive question in the case concerns the liability of Sears as the retailer of the trailer (of which the exploded wheel was a part) which Sears sold under its trade name "Elgin." This is the first time we have had such a situation before us. However, we have had occasion to deal with the so-called "manufacturers' liability doctrine" as expounded by Judge Cardozo in the celebrated case of MacPherson v. Buick Motor Co., 217 N.Y. 382, 111 N.E. 1050, L.R.A.1916F, 696, Ann.Cas.1916C, 440. Among our cases are the following: Greyhound Corporation v. Brown, 269 Ala. 520, 113 So.2d 916; Defore v. Bourjois, Inc., 268 Ala. 228, 105 So.2d 846; Miles v. Chrysler Corporation, 238 Ala. 359, 191 So. 245; Sterchi Bros. Stores v. Castleberry, 236 Ala. 349, 182 So. 474; Altorfer Bros. Co. v. Green, 236 Ala. 427, 183 So. 415; Saunders System Birmingham Co. v. Adams, 217 Ala. 621, 117 So. 72, 61 A.L.R. 1333.

Here, as already noted, we are concerned with a question of liability based on the alleged negligence of a retail vendor of a product offered by it to the public and sold by it under its own trade name. So, the first point to be resolved is: What is the effect on Sears' liability of the fact that it sold the trailer under its own trade name? This question has not been decided in this state. However, there is an applica-

ble principle in the Restatement of the Law of Torts, Sec. 400, providing as follows:

"One who puts out as his own product a chattel manufactured by another is subject to the same liability as though he were its manufacturer."

For cases from other jurisdictions following this rule, see: Restatement in the Courts, Permanent Edition 1932–1944, pp. 715–716; Restatement of the Law (Torts, Sec. 400), 1948 Supp., p. 709; Restatement in the Courts, 1954 Supp., p. 235; Frumer and Friedman, Products Liability, Vol. 1, Sec. 10.02, pp. 190–191. As to the reason for the rule, see Comment d, Restatement of the Law (Torts, Sec. 400), 1948 Supp., p. 708. See also 46 Am.Jur., Sales, Sec. 817.

We hold, in accordance with the stated rule, that Sears' liability is to be determined on the basis that it was the manufacturer of the wheel.

In Defore v. Bourjois, Inc., 268 Ala. 228, 230–231, 105 So.2d 846, 848, supra, it was held that the "manufacturers' liability doctrine" applies:

"in those limited cases where there is no privity of contract between the ultimate user and the manufacturer and where the manufacturer has negligently placed on the market a product which is inherently or imminently dangerous to human life or health, or which, although not dangerous in itself, becomes so when applied to its intended use in the usual and customary manner. Where the user thus sustains an injury which is the natural and proximate result of this negligence in the manufacture or sale of the article and if the injury might have been reasonably anticipated, then the manufacturer is liable to the user under the manufacturers liability doctrine. * * *"

■ Applicable here also is the following from Restatement of the Law of Torts, Sec. 398:

"A manufacturer of a chattel made under a plan or design which makes it dangerous for the uses for which it is manufactured is subject to liability to others whom he should expect to use the chattel lawfully or to be in the vicinity of its probable use for bodily harm caused by his failure to exercise reasonable care in the adoption of a safe plan or design."

■ There is ample evidence from which the jury could have found that the design of the wheel rendered it defective so as to make it imminently dangerous to one reasonably expected to work with it in so arranging the alignment of the bolt holes that the two halves could be bolted together without the "projections" being aligned with the "depressions." Certainly, it should reasonably have been anticipated that the wheel would have to be taken apart and reassembled in connection with the normal and customary use of the trailer, that is, in changing or repairing the tire and tube mounted on the wheel. There is evidence supporting findings that when the "projections" are not aligned with the "depressions" there is left an air space between the two halves of the wheel; that the fracture of the wheel resulted from the pressure in tightening the bolts, thereby causing the "projections" to be forced against the flat surfaces of the two halves rather than being inserted in the "depressions"; that the halves of the wheel were fractured in the reassembling process; and that, in such condition, the pressure of the air placed in the tire caused the explosion.

It is insisted by Sears that the evidence shows that appellee knew how to assemble the wheel and, in failing to match the "projections" and the "depressions," was guilty of contributory negligence so as to deny to him a right to recover even though there should be a finding of Sears' negligence. As to this, it is our view that

the question of appellee's contributory negligence was, under the evidence, a factual issue to be resolved by the jury.

The judgment is due to be affirmed.

Affirmed.

LIVINGSTON, C. J., and SIMPSON. and COLEMAN, JJ., concur.