231 So.2d 88

**FORD MOTOR COMPANY, a Corporation**

**v.**

**Herman Lee THOMAS.**

**6 Div. 685.**

Supreme Court of Alabama.

Jan. 8, 1970.

Rehearing Denied Feb. 12, 1970.

Lange, Simpson, Robinson & Somerville and White E. Gibson, Jr., Birmingham, for appellant.

George S. Brown, Birmingham, for appellee.

BLOODWORTH, Justice.

This is an appeal by Ford Motor Company from a judgment of the circuit court of Jefferson County rendered on a jury verdict in favor of plaintiff-appellee, Herman Lee Thomas, for $45,000, and also from a judgment overruling a motion for a new trial.

Plaintiff Thomas originally filed suit against one Eddie O. Gatson, and various fictitious defendants described generally to include those who placed in plaintiff's possession a wheel and tire assembly which exploded when the plaintiff slid the wheel and tire out of the rear of a service truck preparatory to installing it on Gatson's truck, after the tire had been repaired. Plaintiff was struck on both knees by a rim from the wheel, suffering injuries which included a fracture of the right knee cap.

The original complaint consisted of three counts. They alleged, in substance, that defendants requested plaintiff to repair a flat tire on the Gatson truck, that the rim and component parts were in a defective and dangerous condition, which defendants knew or should have known, while plaintiff did not, and defendants negligently failed to warn plaintiff, and that the tire and wheel exploded as a proximate result of the negligence of the defendants.

On the last day before the running of the statute of limitations of one year (after the occurrence), plaintiff filed an amendment adding fictitious defendants Q, R and S, described as "persons, firms or corporations, that manufactured the lockrim and wheel assembly that injured the plaintiff * * *." Plaintiff also added count A, charging the same negligent failure to warn plaintiff by the original defendants and charging the fictitious defendants with "negligently manufacturing said tire and wheel assembly, so that same was so defective as to be inherently and imminently dangerous * * *." At a later time, plaintiff filed another amendment substituting Ford Motor Company for defendant "Q", and adding count B, essentially the same as previous counts, but additionally charging that the combining and concurring negligence of Ford and the other defendants proximately caused plaintiff's injuries. Still later, plaintiff filed counts C, D, E and F.

The salient allegations of counts D, E, and F, with respect to defendant Ford Motor Company, are as follows:

*Count D.* " * * * which said defective wheel with a defective locking rim had theretofore been negligently manufactured by the defendant, Ford Motor Company, a corporation, so that the same was immi-

216

nently or inherently dangerous when put to the use for which it was intended. * * * "

*Count E.* " * * * which said wheel with a defective locking rim had theretofore been negligently placed on said vehicle by the defendant, Ford Motor Company, so that said defective wheel with said defective locking rim was imminently or inherently dangerous when put to the use for which it was intended. * * * "

*Count F.* " * * * which said defectively designed locking rim had therefore been negligently placed on said vehicle by the defendant, Ford Motor Company, so that said defectively designed wheel with said defectively designed locking rim was imminently or inherently dangerous when put to the use for which it was intended. * * * "

The cause went to trial against defendants Gatson and Ford Motor Company on counts D, E and F, only. At the conclusion of the plaintiff's case, the court gave the general affirmative charge without hypothesis for the defendant Gatson. Defendant Ford offered no testimony. The jury then returned a verdict in favor of plaintiff and against Ford Motor Company in the sum of $45,000, for which judgment was rendered. After a motion for new trial was filed, argued and submitted, it was overruled by the court January 14, 1969, and this appeal ensued.

The facts are that Carl Harvella operated a Texaco Service Station in Jefferson County at which plaintiff was employed. On the date plaintiff was injured and in response to a call, Harvella sent plaintiff to pick up a tire for repair from a truck owned by Eddie Gatson. At the service station, plaintiff began disassembling the tire and had taken off the lock ring when Harvella assigned him to other work, took over himself and completed the repair of the tire and remounting it. Harvella described how, after the tire and lock ring were on the wheel, a small amount of air was put in the tire, after which the ring was centered and the rest of the air was put in. He inflated the tire to 40 pounds,

then put the assembled and inflated tire in his truck and sent plaintiff to put it on the vehicle. The wheel and ring were fourteen years old, being mounted on a 1950 Ford Van truck.

The wheel is so constructed that it has a detachable rim with a lock ring. The lock ring has a slot to permit insertion of a tool to pry it on and off. The rim or flange is not uniform all around, but has a cut out part apparently designed to enable the lock ring to be started on it and under which flange the lock ring fits.

Plaintiff, a 64 year old man and an automobile mechanic and service station attendant for almost 50 years, removed the wheel from the truck at the location of Gatson's vehicle. He slid the wheel and inflated tire out of the rear of his truck by hooking his hand in the center of the wheel. When it touched the ground it blew apart and the rim hit him in the knees and threw him ten feet, after which the rim went sailing across the street. It sounded like dynamite going off. The explosion blew the tube all to pieces and left the tire and wheel lying on the ground. He was helped up on the rear of the truck by two city firemen who were nearby, and later went to the hospital. He was found to have abrasions of both knees, hematoma of the right knee, a vertical fracture of the right kneecap, comminuted without displacement. His permanent partial disability was estimated to be 15% of the right lower extremity.

The testimony with respect to the defective locking rim may be briefly summarized as follows:

Witness Harvella (the service station operator who was plaintiff's employer) testified that what "permits" these wheels to separate from the ring is "that metal ring probably tends to stretch a little * * * it don't go back into position like it should" and as the last person to handle it before the accident, he says it "was not then in an unsafe condition" as far as he was able to observe.

Plaintiff (with 50 years experience as an auto mechanic service man) testified he "didn't see anything" that he considered to be a defect in the wheel before the accident, but that "it is a dangerous thing to start with * * * even when it is centered," that the wheel had distortions on it, but that he wouldn't say a ring or rim with such distortions on it would be more dangerous, "that wheel is always to me been one of the most dangerous wheels that was ever made."

Witness Fain (with 14 years experience in the wholesale wheel rim business) testified that the wheel "that goes on a 1950 Ford van" and that "was used by the Ford Motor Company on its 1950 Ford vans" was the same as plaintiff's exhibit (the alleged defective wheel), and that no other company was using that identical type wheel, that if the wheel was "out of round, it could cause a bad seating * * *" which would cause the ring to come off but that this "ring looks like it is not in too bad a shape * * *. It is not bent * * *."

Witness Hill (with 21 years experience in the tire business) testified "the beating on the rim there don't hurt it * * *"; that "it is dangerous for anybody" to change such a tire; that "it is just a dangerous rim, that is all it is" and that which "causes it to blow off" is "in the ring, in the lock and in the rim itself"; that "the lock ring itself is a dangerous ring * * * all of these kind" are, although he says "a split lock ring, it is not half as dangerous as these locks, because the locks is dangerous all the way," however, "they are not dangerous if they are put on right."

Witness Gatson (owner of the truck) testified the truck with the flat tire which was to be repaired by plaintiff was a 1950 Model Ford Van.

Appellant Ford argues the following assignments of error as grounds for reversal:

(6) Error in overruling demurrers to count D, because the count fails to allege the defective and imminently dangerous condition was known or reasonably could have been known to Ford, and because it fails to allege what the defect was; (7) error in overruling demurrers to count E, because the count fails to allege what the defect was; (8) error in overruling demurrers to count F, because the count fails to allege what the defect was, and fails to allege proximate cause; (12) error in refusing to give the general affirmative charge with hypothesis as to count D, because the evidence failed to show that Ford manufactured the wheel, and since Ford (the only defendant left when the case was submitted to the jury) was a substituted defendant for defendant "Q", after the statute of limitations had run, and "Q" was alleged to have manufactured the wheel, this worked an entire change of parties; (13) error in refusing to give the general affirmative charge with hypothesis as to count E for the same reasons as apply to count D; (14) error in refusing to give the general affirmative charge with hypothesis as to count F for the same reasons as the other two counts, and also because there was no evidence of negligent design; (11) error in overruling objection to a question to witness Harvella on the grounds that it assumed the ultimate fact in issue and invaded the province of the jury; (17) error in refusing defendant's requested charge 17, since there was no proof of manufacture of the wheel by Ford; (18) error in refusing requested charge A because it is a correct statement of law; (19) error in refusing defendant's requested charge B which correctly defined the duties of care of defendant Ford; and finally, (1) error in overruling the motion for new trial.

■ We need consider only assignment of error 14—the contention that the proof was insufficient to go to the jury on count F. For we have concluded the case will have to be reversed and remanded for a new trial because of error in refusing the general affirmative charge as to count F.

Count F alleges in part the "defectively designed locking rim * * * [was] negligently placed on said vehicle * * * so that * * * [it] was imminently or inherently dangerous when put to the use for which it was intended. * * *"

We have carefully read the entire transcript and must conclude in the words of appellant Ford's brief that " * * * evidence of negligent [or defective] design was conspicuously absent."

We note that the strongest evidence with respect to "design" appears to be in the testimony of witness Hill (a Goodyear Service Store employee) that "the lock ring itself is a dangerous ring * * * all the way * * *" and that the thing that causes it to blow off "would be in the ring, in the lock and the rim itself." In our view, the evidence falls far short of proof of defective or negligent "design."

As observed by Ford in its brief, the evidence was uncontroverted that dislodgment of a lock ring is a rare occurrence, and that this design was in general use as standard equipment by major manufacturers for many years. The so-called "split rim" referred to in the testimony is a new design, unknown to the industry in 1950 when the Gatson truck was built.

Perhaps, we should comment at this point that we do not suggest that use generally in an industry of a certain design or a lack of knowledge of a newer and safer design legally excuses a manufacturer if the design used is proved to be negligent.

Sears, Roebuck & Company v. Morris, 273 Ala. 218, 136 So.2d 883, is mentioned and relied on in plaintiff Thomas' brief. We note that we said in *Morris,* at page 222, 136 So.2d at page 885:

"Applicable here also is the following from Restatement of the Law of Torts, Sec. 398:

" 'A manufacturer of a chattel made under a plan or design which makes it dangerous for the uses for which it is manufactured is subject to liability to others whom he should expect to use the chattel lawfully or to be in the vicinity of its probable use for bodily harm caused by his failure to exercise reasonable care in the adoption of a safe plan or design.'

"There is *ample evidence* from which the jury could have found that the design of the wheel rendered it defective so as to make it imminently dangerous to one reasonably expected to work with it * * *. * * * *" [Emphasis supplied]

We have gone to the record in *Morris* and find that the *ample evidence* referred to consisted of testimony by a chemical and metals engineer who personally made an analysis of the metals in the wheel in question and determined their respective tensile strengths. He testified directly that the bursting of the wheel (in that case) was caused by "First, it is poor metal and second poor design. * * * It is defective in design * * * it is a dangerous wheel * * *."

There is no evidence of similar or like import in this case. We have had no case cited to us, nor in our research have we found a case, in which a count alleging defective design was allowed to go to the jury with no more evidence than the record here discloses.

We have already indicated that evidence of negligent design was offered by plaintiff in *Morris,* supra. Likewise, in the recent Florida case of A. E. Finley and Associates, Inc. v. Medley, (Dist.Ct. of Appeals of Florida, 3rd District 1962) 141 So.2d 613, evidence offered by plaintiff as to negligent design, as well as to negligent assembly, of a portable rock crusher, was held sufficient to go to the jury.

■ There is no room here for operation of the "error without injury" doctrine because we have held it "cannot be applied to the refusal of a charge denying the plaintiff's right to recovery under one of the counts of the complaint *which was not supported by any evidence,* merely because

there was evidence tending to support the other count [counts] and the verdict of the jury was probably founded on them." [Emphasis supplied] Jordan v. Henderson, 258 Ala. 419, 421, 63 So.2d 379, 381; Louisville & Nashville Railroad Company v. Johns, 267 Ala. 261, 279, 101 So.2d 265, 74 A.L.R.2d 499.

We presume that on a retrial the other questions raised on this appeal as to whether the pleadings are sufficient to state causes of action, whether the evidence is sufficient to go to the jury on the other counts of the complaint, whether there was an "entire change of parties" working a discontinuance, whether there was error in overruling objections to a certain question propounded to a witness, and whether there was error in refusing certain charges, will not reoccur.

For the error in allowing the case to go to the jury on count F, this case is reversed and remanded.

Reversed and remanded.

LIVINGSTON, C. J., and SIMPSON, COLEMAN and McCALL, JJ., concur.