This is an appeal from an order of the Circuit Court of Jefferson County dismissing County Two of Casrell's complaint, asserting breach of implied warranty, and dismissing Count Three of her complaint, asserting strict tort liability. We consider only that part of the order dismissing Count Three, because that is the only aspect of the case presented to the court, and argued. We reverse.
Horace Casrell was an employee of Utility Line Clearance Company — a company engaged in the business of maintaining and repairing high tension power lines belonging to rural Co-ops in Pike County. On October 12, 1972, Casrell was a member of a crew working on lines belonging to South Alabama Electric Cooperative Company. His crew was using a truck with a telescoping arm, on which there was located a bucket large enough to contain a man for the purpose of raising him to the level of the power line. While Casrell was standing on the ground near the truck, the telescoping arm contacted one of the power lines, causing the current of electricity to flow through the telescoping arm, and into the chasis of the truck. As a result, Casrell, who was either then touching the truck or standing close enough to permit arcing to occur, was electrocuted.
Altec and Mobile manufactured, assembled, and sold the truck including the telescoping arm to Utility.
The administratrix contends that the product was defective because it did not provide for adequate and necessary insulation either in the telescoping arm, or in the body of the truck, to prevent the occurrence of the kind of incident that resulted in the death of Horace Casrell.
Briefly, the complaint alleged that:
1. The product was defective;
 2. The product was defective when it left the defendants' possession and control;
3. The product reached the user without substantial
change in the condition in which it was sold, and
 4. Casrell's death was the proximate result of the defective condition which was unreasonably dangerous to the ultimate consumer when put to its intended use.
There was also a traditional negligence count and one alleging breach of warranty. The trial court denied the motion to dismiss the negligence count, and granted the motion to dismiss the breach of warranty, and strict tort liability counts. On appeal, Casrell abandoned her breach of warranty theory.
 Opinion and Conclusions
Strict tort liability has been adopted in most jurisdictions of these United States by applying § 402A, Restatement of Torts 2d, which provides:
 "(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
 "(a) the seller is engaged in the business of selling such a product, and
 "(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.
 "(2) The rule stated in Subsection (1) applies although
 "(a) the seller has exercised all possible care in the preparation and sale of his product, and
 "(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller."
Section 398, Restatement (Second) Torts, provides:
 "A manufacturer of a chattel made under a plan or design which makes it *Page 131 
dangerous for the uses for which it is manufactured is subject to liability to others whom he should expect to use the chattel or to be endangered by its probable use for physical harm caused by his failure to exercise reasonable care in the adoption of a safe plan or design."
We observe that legal scholars and courts have had difficulty with theories of negligence and strict tort liability in defective design cases. Are they one and the same? (For a historical collection of cases and writings on the subject of strict tort liability, see Seattle-First National Bank v.Tabert, 86 Wn.2d 145, 542 P.2d 774 [1975].)
In Balido v. Improved Machinery, Inc., 29 Cal.App.3d 633,105 Cal.Rptr. 890 (Cal. 1973), the California Court of Appeals, Second District, said:
 "`* * * Strict liability for deficient design of a product (as differentiated from defective manufacture or defective composition) is premised on a finding that the product was unreasonably dangerous for its intended use, and in turn, the unreasonableness of the danger must necessarily be drived from the state of the art at the time of design. (Thompson v. Package Machinery Co., 22 Cal.App.3d 188, 191-192, 99 Cal.Rptr. 281.) A danger is unreasonable when it is foreseeable, and the manufacturer's ability, actual, constructive, or potential, to forestall unreasonable danger is the measure of its duty in the design of its product. A manufacturer's failure to achieve its full potential in design and thereby forestall unreasonable danger forms the basis for its strict liability in tort. It is a liability whose essence parallels the lack of due care that is the essence of its liability for negligence. It may be seen, therefore, that in cases involving deficient design, foreseeability is merely scienter under another name. Since the issue is whether Improved [defendant] designed and put into circulation a product unreasonably dangerous for use and since the unreasonableness of the danger must be determined by the potential available to the designer at the time of design, it is apparent that the strict liability and negligence claims merge. * * *'"
Cf. Roach v. Kononen, 525 P.2d 125 (Ore. 1974) quoting this case.
The historical and traditional purpose of tort law has been to protect persons against unreasonable risks. The only real difference between strict tort liability and the traditional negligence theory in products liability cases is that those courts which have adopted the rule of strict liability look to the dangerous characteristics of the end product, rather than the methods or processes by which it was produced. This represents a shift in emphasis from the manufacturer's, or seller's, conduct to the performance of his product. However, the results are the same, viz., the defendants must pay the consequences of placing an unreasonably dangerous or defective product on the market. If a product is unreasonably dangerous, it is necessarily defective, and the consumer should not be required to prove defectiveness as a separate matter.
Dean Wade said in On the Nature of Strict Tort Liability forProducts, 44 Miss.L.J. 828 (1973):
 "The time has now come to be forthright in using a tort way of thinking and tort terminology. There are several ways of doing it and it is not difficult. The simplest and easiest way, it would seem is to assume that the defendant knew of the dangerous condition of the product and ask whether he was then negligent in putting it on the market or supplying it to someone else. In other words, the scienter is supplied as a matter of law, and there is no need for the plaintiff to prove its existence as a matter of fact. Once given this notice of the dangerous condition of the chattel, the question then *Page 132 
becomes whether the defendant was negligent to people who might be harmed by that condition if they came into contact with it or were in the vicinity of it."
This court has already applied tort terminology to an action based on the defective condition of the product. Cf. Ford MotorCo. v. Thomas, 285 Ala. 214, 231 So.2d 88 (1970); NortonCompany v. Harrelson, 278 Ala. 85, 176 So.2d 18 (1965); Sears,Roebuck Co. v. Morris, 273 Ala. 218, 136 So.2d 883 (1961). Justice Merrill in Defore v. Bourjois, Inc., 268 Ala. 228,105 So.2d 846 (1958) used the term "manufacturer's liability doctrine" in a suit against the manufacturer of an alleged defective perfume bottle. He said manufacturer's liability applies
 ". . . in those limited cases where there is no privity of contract between the ultimate user and the manufacturer and where the manufacturer has negligently placed on the market a product which is inherently or imminently dangerous to human life or health, or which, although not dangerous in itself, becomes so when applied to its intended use in the usual and customary manner. Where the user thus sustains an injury which is the natural and proximate result of this negligence in the manufacture or sale of the article and if the injury might have been reasonably anticipated, then the manufacturer is liable to the user under the manufacturers liability doctrine."
The manufacturer's liability doctrine was applied in Sears,Roebuck Co. by Justice Goodwyn — a case holding that a retailer selling a boat trailer under its own trade name could be held liable as a manufacturer, for injuries resulting from the explosion of a wheel.
In Defore the plaintiff was denied recovery because of failure to prove that defendants negligently failed to inspect the perfume bottle. In Sears, Roebuck Co. the plaintiff's contributory negligence was a jury question.
We now extend the doctrine of "manufacturer's liability," and by definition this doctrine shall include not only the manufacturer, but also the supplier and the seller. We do not intend to impose a no-fault concept. On the other hand, we adhere to the tort concept of fault. Under the "extended manufacturer's liability doctrine," we opine that a manufacturer, or supplier, or seller, who markets a product not reasonably safe when applied to its intended use in the usual and customary manner, constitutes negligence as a matter oflaw. As Dean Wade suggests, we hold scienter is supplied as a matter of law, and there is no need to prove its existence as a matter of fact. In other words, the fault or negligence of the defendant is that he has conducted himself in a negligent manner by placing a product on the market causing personal injury or property damage, when used to its intended purpose. As long as there is a causal relationship between the defendant's conduct and the defective product, he is held liable because he has created an unreasonable risk of harm. Liability — subject to allowable legal defenses — attaches solely because the defendants have exposed expected users of a product not reasonably safe to unreasonable risks. This is morally and legally correct.
To establish liability, a plaintiff must show:
 (1) he suffered injury or damages to himself or his property by one who sells a product in a defective condition unreasonably dangerous to the plaintiff as the ultimate user or consumer, if
 (a) the seller is engaged in the business of selling such a product, and
 (b) it is expected to and does reach the user or consumer without *Page 133 
substantial change in the condition in which it is sold.
 (2) Showing these elements, the plaintiff has proved a prima facie case[1] although
 (a) the seller has exercised all possible care in the preparation and sale of his product, and
 (b) the user or consumer has not bought the product from, or entered into any contractual relation with, the seller.
By extending the doctrine of manufacturer's liability, we are not invading the province of the Legislature. Developing case law is a proper role for this court, and that is what we are doing in this case. We are here removing the defense of due care in the manufacture and sale of the product. The care with which a defective product is manufactured and sold is now immaterial, when given the allegation and proof of injury resulting proximately from the product's defective condition.
 DEFECT AND UNREASONABLY DANGEROUS
Altec and Mobile ask what products are covered, what is a "defect," and by inference, what is "unreasonably dangerous." It has been held that the terms are synonymous, that is, defective means unreasonably dangerous and has no independent significance. See Reyes v. Wyeth Laboratories, 498 F.2d 1264
(5th Cir. 1974); Borel v. Fibreboard Paper ProductsCorporation, 493 F.2d 1076 (5th Cir. 1973).
Our answer is, a "defect" is that which renders a product "unreasonably dangerous," i.e., not fit for its intended purpose, and that all "defective" products are covered. Whether a product is "unreasonably dangerous" is for the trier of fact, just as negligence, vel non, is in a traditional negligence case.
The product either is or is not "unreasonably dangerous" to a person who should be expected to use or to be exposed to it. If it is, it makes no difference whether it is dangerous by design or defect. The important factor is whether it is safe or dangerous when the product is used as it was intended to be used. Cf. 62 Ky. L.J. 866. However, danger may be obviated by an adequate warning. Comment i. of § 402 A, Restatement of Torts 2d, states:
 "The article sold must be dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics."[2]
"Defective" is interpreted to mean that the product does not meet the reasonable expectations of an ordinary consumer as to its safety. Comment g. of the Restatement says defective condition applies when, at the time the product leaves the seller's hands, it is in a condition not contemplated by the ultimate consumer. *Page 134 
 DEFENSES
What defenses are available to defendants, ask Altec and Mobile. Ordinarily, defenses fall into two categories: (1) general denial, and (2) affirmative defenses.
Under the general denial defense, the defendant may offer evidence to counter plaintiff's prima facie case. For example, where plaintiff's evidence infers that the product was defective when it left the manufacturer's control and possession, the manufacturer can rebut this evidence, proving the defect, if any, occurred while in the possession or control of the distributor or retailer. Moreover, the defendant may affirmatively show that it did not contribute to the defective condition, had no knowledge of it, and had no opportunity to inspect the product. In other words, there was no causal relation in fact between his activities in handling the product, and its defective condition. But, this "lack of causal" relation defense is not to be understood as being available to a manufacturer, where the defect is in a component part, or to a defendant who distributes a product under its trade name. Sears, Roebuck Co. The defendant may assert the negligent conduct of the plaintiff in using the product, as well as the defense of assumption of risk. Cf. Comment K., § 401 A Restatement, Torts 2d.
 WRONGFUL DEATH
In our opinion the Alabama Extended Manufacturer's Liability Doctrine includes wrongful death actions, subject of course to the same defenses enumerated above. The wrongful act within the meaning of § 123, Title 7, Code of Alabama, is placing an unreasonably dangerous product on the market. Damages are to be awarded that will punish the tortfeasor for the act and deter him and others from similar future conduct.
 CONCLUSION
The judgment of the trial court is reversed, and the trial court is ordered to reinstate the case, so that the administratrix may attempt to show that Altec and Mobile manufactured, assembled, and sold a product that was defectively unreasonably unsafe, when used for its intended purpose. This proof establishes negligence.
REVERSED AND REMANDED.
HEFLIN, C.J., and MERRILL, BLOODWORTH, MADDOX, JONES, ALMON, SHORES and EMBRY, JJ., concur.
[1] We suggest the better practice in actions brought asserting liability under the theory of law expounded in this opinion to be an allegation or statement in the complaint to the effect that "this action is brought under the Alabama Extended Manufacturer's Liability Doctrine."
[2] In Welch v. Outboard Marine Corp., 481 F.2d 252, (5th Cir. 1973) the court approved this instruction to the jury:
"`A condition is unreasonably dangerous so as to constitute a defective condition when it is so dangerous that a reasonable man would not sell the product if he knew of the risks involved . . . To put it another way, a product is unreasonably dangerous if it is dangerous to an extent beyond which would be contemplated by the ordinary consumer who purchases it with the ordinary knowledge common to the community as to its characteristics.'"