On Rehearing
This appeal is from a judgment for the defendant in a suit on a promissory note. On rehearing our opinion of September 20, 1978 is withdrawn and the following is substituted therefor.
The defendant, Donald McLeod, entered into an agreement with and made a note payable for $8,000 plus interest to Great Lakes Nursery Corporation on October 12, 1966. The note was subsequently purchased by the plaintiff, First Investment Company on December 17, 1966. McLeod was notified by a letter to make future payments on the indebtedness represented by the note to First Investment Company.
McLeod never made any payments on the note but, pursuant to an agreement between McLeod and Great Lakes Nursery, the latter made the payments to plaintiff required by the note for and on behalf of defendant. Great Lakes Nursery continued to make these payments until about November 1967, then stopped and sometime later went into bankruptcy. Demand for payment from McLeod was not made by plaintiff until May 1968.
First Investment Company filed suit on the note on October 11, 1972. The defendant answered by, among other grounds, claiming a lack of consideration for the note and that plaintiff, a foreign corporation, was doing business in Alabama without first having qualified so to do. The first trial before a jury resulted in a mistrial; *Page 776 
the second trial resulted in a general verdict for the defendant. The plaintiff appeals. We reverse.
On appeal plaintiff argues that it is a holder in due course of the note and is thereby not subject to the defense of failure of consideration. Plaintiff also argues that, because it is engaged in interstate commerce only, it is not subject to the defense of failure to qualify to do business in Alabama, and that the trial court erred in allowing the jury to consider this defense.
We think the trial court improperly denied plaintiff's motion for a directed verdict on the defense of failure to qualify to do business in Alabama, and that it erred to reversal in submitting this issue to the jury. Because this issue is dispositive of this appeal we pretermit any review of the defense of failure of consideration.
Plaintiff contends that at the time the note was taken from defendant, Great Lakes Nursery, although not qualified to do business in Alabama, was not governed by the provisions of Art. XXI, § 232, Constitution of Alabama 1901 and § 10-2-254 of the Code of Alabama 1975 for the reason that Great Lakes Nursery was not "doing business" in Alabama so as to make its note void.
The above mentioned state constitutional provision states that a foreign corporation shall not do any business in this state without having at least one known place of business and at least one authorized agent therein, and without filing with the secretary of state a certified copy of its articles of incorporation.
Title 10, § 21 (89), Code of Alabama 1940 (Recomp. 1958) (Supp. 1973) (currently § 102-254, Code of Alabama 1975) provides as follows:
 All contracts or agreements made or entered into in this state by foreign corporations which have not qualified to do business in this state shall be held void at the [suit] of such foreign corporation or any person claiming through or under such foreign corporation by virtue of said void contract or agreement. . . .
The Alabama Supreme Court in Kentucky Galvanizing Co. v.Continental Casualty Co., Ala., 335 So.2d 649 (1976), said that § 10-2-254 comes into play only when the business conducted in the state by non-qualified corporations is considered "intrastate" in nature. In holding that Galvanizing was engaged only in "interstate" commerce, the supreme court said:
 We note that Galvanizing has never manufactured, fabricated or installed any materials in the State of Alabama. What it has sold to buyers in Alabama it has delivered to the assigned jobsites. Other than delivery, Galvanizing does nothing in Alabama except what is incident to soliciting and taking orders for shipment of goods in interstate commerce and delivery of these goods.
. . . . .
 The appellees, by their own admission in brief, outline the activities of Galvanizing which make its activities interstate rather than intrastate in nature. They note that Galvanizing is a foreign corporation which manufactures products outside the state and ships to customers in the state, that these sales were arranged through solicitation by one of the corporation's agents, that the agent made monthly trips into this state for that purpose and that during those trips he would confer with customers and arrange or negotiate a sale. Appellees also point out that the sale would not be consummated in Alabama but through processing order blanks which would be forwarded to the corporate headquarters outside the state. This description of Galvanizing's activities denotes the interstate nature of Galvanizing's business dealings.
In the case at bar the facts show that Great Lakes Nursery was in the business of selling franchise agreements for the growing and selling of Christmas trees.
McLeod testified that he saw a newspaper or magazine advertisement by Great Lakes and wrote to them asking for additional information. Later two salesmen for Great Lakes came to Alabama and talked to him. After discussing the proposed *Page 777 
arrangement over a period of two or three days, McLeod said that he signed the franchise agreement and note. The agreement provided that he would buy a certain number of seedlings, i.e., thirty thousand, from Great Lakes and in return Great Lakes would provide at wholesale prices certain equipment and fertilizers to be used in the planting, growing and sale of the trees. Great Lakes was to root prune the trees and provide all necessary technical training and supervision for the planting, growing and marketing of the trees; Great Lakes was also obligated to take care of the advertising campaign to be used for the promotion of the sale of the Christmas trees. Also, Great Lakes agreed, if requested by McLeod, to furnish a mechanical tree digger and mechanical tree sprayer along with the personnel to operate this equipment.
McLeod testified that he received approximately twenty thousand seedlings and planted them in a lining bed where they were to stay until the soil in the fields where they were to be planted was fumigated. McLeod said the soil was never fumigated, the tree planting machine was not furnished, nor was help forthcoming that was promised. As a result, the trees died.
McLeod further stated that the $8,000 note he signed was to be paid in installments of $154.57 a month. He was promised that Great Lakes would in the beginning make any payment that he could not make; however, when the tree harvest began, he would be expected to make the payments and would also have three years to make any payments that Great Lakes had previously made for him. He also said that he was promised a job with Great Lakes if he signed the agreement. For his work he was to receive $25 a day plus expenses.
Pursuant to this promise McLeod did accompany a Great Lakes employee to call on people in Alabama and Georgia who had written to Great Lakes in response to its ad campaign to see if they were interested and qualified for a franchise. If it developed that the prospect was qualified, someone from Great Lakes would come down and attempt to close the sale. McLeod said he was a salesman-trainee and was paid for his work by Great Lakes. After this sale was made he and another person delivered the seedlings to the purchaser by rental truck from Michigan.
As stated in Kentucky Galvanizing Co. v. Continental CasualtyCo., the facts in the present case show that Great Lakes, other than delivery of the trees, did nothing in Alabama except what is incident to soliciting sales of its franchising agreements for the sale and delivery of Christmas tree seedlings. In support of this conclusion see In re Delta Molded Products,Inc., 416 F. Supp. 938 (N.D.Ala. 1976), aff'd. sub nom. Sternev. Improved Machinery, Inc., 571 F.2d 957 (5th Cir. 1978), where the contract requirement to furnish expert help, advice and counsel was considered to be only incidental to the sales and delivery aspect of the transaction, yet was deemed to be a prime inducement to the signing of the lease agreement; consequently these incidental requirements did not transform the transaction from one interstate in nature to one intrastate in nature.
Likewise, in the case at bar, the requirements to furnish expert help, equipment and advice were merely incidental attributes of the main undertaking of Great Lakes which was the sale and delivery of Christmas tree seedlings to Alabama from another state.
In the absence of facts showing that Great Lakes was doing an "intrastate" business in Alabama, Section 232, Constitution of Alabama 1901, is inapplicable to plaintiff and § 10-2-254 is not available to defendant as a defense to plaintiff's action on the note in question.
We find it unnecessary to quote at length from the trial court's oral charge. In essence the charge instructed the jurors to consider both the defense of failure of consideration and the defense of failure to qualify to do business in Alabama. The jury was further instructed that if defendant had met his burden in proving either of these affirmative defenses, then they should return a verdict for defendant. *Page 778 
An issue should be taken from the jury only when there is not a scintilla of evidence in support of a controverted point.Dixie Electric Co. v. Maggio, 294 Ala. 411, 318 So.2d 274
(1975). In the absence of a conflict of evidence or factual dispute, the issue is one of law for the court to resolve.Progressive Casualty Insurance Co. v. Blythe, Ala.Civ.App.,350 So.2d 1062 (1977).
Although the trial court's charge contained no incorrect statements of law, the record in this case is completely devoid of any evidence tending to support defendant's claim that Great Lakes Nursery was engaged in "intrastate" commerce. Thus plaintiff was due the affirmative charge on the defense of failure to qualify to do business in Alabama. The trial court's denial of plaintiff's motion for directed verdict on this issue improperly allowed the jury to consider that defense.
Where two defenses are pleaded, and it cannot be determined on which the jury based a verdict for defendant, an erroneous instruction as to one defense cannot be held harmless error, though the verdict may be sustainable on the other. AmericanSugar Refining Co. v. J.E. Jones Co., 293 F. 560 (5th Cir. 1923).
Our case law makes it clear that where the verdict is general, but prejudicial error obtains to the court's instruction to the jury on any theory of recovery, the verdict must be set aside because no determination can be made as to which of several issues the jury relied upon in reaching its verdict. See e.g. Liberty National Life Insurance Co. v. Smith, Ala., 356 So.2d 646 (1978); Old Southern Life Insurance Co. v.Woodall, 295 Ala. 235, 326 So.2d 726 (1976); Ford Motor Co. v.Thomas, 285 Ala. 214, 231 So.2d 88 (1970). We think the same general principles apply to a general verdict for the defendant, where erroneous instructions are given regarding one of the affirmative defenses raised by defendant. Such a verdict should also be set aside because no determination can be made as to which of the defenses the jury relied upon in reaching its verdict.
For the foregoing reasons this case is due to be reversed.
APPLICATION FOR REHEARING GRANTED.
REVERSED AND REMANDED.
HOLMES, J., concurs.
WRIGHT, P.J., concurs in the result.