**Judy A. BROCK, Plaintiff,**

v.

**BAXTER HEALTHCARE CORPORATION, et al., Defendants.**

**No. 00–0075–BH–C.**

United States District Court,
S.D. Alabama,
Southern Division.

April 19, 2000.

Michael A. Youngpeter, Rothrock, Hannan & Youngpeter, Mobile, AL, for plaintiff.

Maibeth J. Porter, Katharine A. Weber, Marcie E. Paduda, Maynard, Cooper, and Gale P.C., Birmingham, AL, Michael C. Niemeyer, Michael Warren Butler, Lyons, Pipes & Cook, Mobile, AL, Richard A. Ball, Jr., Montgomery, D. Brent Baker, A. Danner Frazer, Jr., Frazer, Greene, Upchurch & Baker LLC, Mobile, AL, Daniel P. Lynch, Lavin, Coleman, O'Neil, Ricci, Finarelli & Gray, Philadelphia, PA, Dennis Patrick McKenna, Prince, McKean, McKenna & Broughton, Mobile, AL, Lawrence Brown Clark, Lange, Simpson, Robinson, & Somerville, LLP, Birmingham, AL, Michael Goetz, Holland & Knight, LLP, Tampa, FL, Benjamin R. Rice, Spurrier, Rice, Wood & Hall, Huntsville, AL, Stuart M. Feinblatt, Sills, Cummis, Radin, Tischman, Epstein & Gross, P.A., Newark, NJ, R. Boyd Miller, Cabaniss, Johnston, Gardner, Dumas & O'Neal, Mobile, AL, Daniel W. Whitney, Whitney & Bogris, LLP, Towson, MD, Anthony N. Fox, Clark & Scott, P.C., Harlan I. Prater, IV, William Larkin Radney, IV, Lightfoot, Franklin & White, Birmingham, AL, John Dames, Chicago, IL, Carroll H. Sullivan, Clark, Scott and Sullivan, Mobile, AL, George E. Duncan, Jr., Duncan & Mangiafico, P.C., Atlanta, GA, Maibeth J. Porter, Katharine A. Weber, Maynard, Cooper, and Gale P.C., Birmingham, AL, Mark F. McCarthy, Cleveland, OH, John N. Leach, Jr., Joseph P.H. Babington, Helmsing, Leach, Herlong, Newman & Rouse, P.C., Mobile, AL, Michael T. Sun, Law Offices of Michael T. Sun, Santa Monica, CA, Vincent A. Noletto, Jr., Brooks & Hamby, . P.C., Mobile, AL, for defendants.

## ORDER

HAND, Senior District Judge.

This action comes before the Court on Plaintiff's motion to remand (Doc. 63). Plaintiff, a citizen of Alabama, filed this action in the Circuit Court of Mobile County, Alabama, on January 11, 2000. The complaint asserts claims under the Alabama Extended Manufacturer's Liability Doctrine (AEMLD). The complaint further alleges claims of Negligence, Wantonness, Breach of Contract, Fraud, and Conspiracy. The case was subsequently removed to this Court based on diversity jurisdiction. Defendants contend that Wound Therapy, an Alabama corporation, was fraudulently joined as a defendant in this action merely to defeat complete diversity. For the reasons set forth below, the Court agrees with the Defendants, and finds that Wound Therapy was fraudulently joined. Therefore, Wound Therapy is due to be dismissed from this action, and Plaintiff's motion to remand is due to be denied.

### UNDISPUTED FACTS

1. Plaintiff alleges she developed an allergic reaction to latex products as a result of her extended use of latex rubber gloves. (Compl.)

2. Plaintiff has filed suit against a variety of manufacturers and distributors of latex rubber gloves. (Compl.)

3. Wound Therapy is one such distributor of latex rubber gloves. (Compl.)

4. Wound Therapy is an Alabama resident. (Compl.)

5. Acme United Corporation (Acme) manufactures latex rubber gloves and a variety of other products contained in a "sterile dressing kit" distributed by Wound Therapy. Acme packages and seals the "sterile dressing kit" before delivering it to Wound Therapy. (1st Aff. of Henry Fulgham.)

6. Wound Therapy does not tamper with or inspect the "sterile dressing kits",

or the latex rubber gloves contained therein, prior to selling them. (1st Aff. of Henry Fulgham.)

7. Acme prints the name Wound Therapy Specialist on the box containing the "sterile dressing kit" before it delivers the kits to Wound Therapy. (2nd Aff. of Henry Fulgham.) It also clearly states on the box that the kit is manufactured by Acme. It further states on the box that the kit is "Made Exclusively For: Wound Therapy Specialist". (Doc. 65, Exhibit A).

8. Wound Therapy did not know of any defect (if any) associated with the latex gloves it distributed along with the "sterile dressing kit" manufactured by Acme.[1] (1st Aff. of Henry Fulgham.)

### CONCLUSIONS OF LAW

For this Court to assert subject matter jurisdiction based on diversity of citizenship, every defendant must be diverse from every plaintiff. 28 U.S.C.A. § 1332. If a non-diverse Defendant has been fraudulently joined by the Plaintiff, the non-diverse Defendant's citizenship will not be considered when determining whether the parties are truly diverse. 28 U.S.C.A. §§ 1332, 1441(a); *Jeter v. Orkin Exterminating Co.*, 84 F.Supp.2d 1334, 1337 (M.D.Ala.2000); *see also, Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1360 (11th Cir.1996); *but see, Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir.2000) (abrogating *Tapscott* on different grounds). In order for the Defendants to prove fraudulent joinder of Wound Therapy, they must show either "(1) there is no possibility the plaintiff can establish a cause of action against the resident defendant; or (2) the plaintiff has fraudulently pled jurisdictional facts to bring the resident defendant into state court. The burden of the removing party is a 'heavy one.' To determine whether the case should be remanded, the district court must evaluate the factual allegations in the light most favorable to the plaintiff and must resolve any uncertainties about state substantive law in favor of the plaintiff. The federal court makes these determinations based on the plaintiff's pleadings at the time of removal; but the court may consider affidavits and deposition transcripts submitted by the parties." *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir.1997) (internal citations omitted).

"Where a plaintiff states even a colorable claim against the resident defendant, joinder is proper and the case should be remanded to state court." *Pacheco de Perez v. AT&T Co.*, 139 F.3d 1368, 1380 (11th Cir.1998). This Court must evaluate the factual allegations "in the light most favorable to the plaintiff", and must resolve all uncertainties regarding the applicable law in favor of the Plaintiff. *Id.*

The Defendants do not argue that Plaintiff has fraudulently pled jurisdictional facts, therefore the only issue before the Court is whether the Plaintiff can establish a cause of action against Wound Therapy. If not, Wound Therapy has been fraudulently joined and its Alabama residency can not be considered when determining whether complete diversity exists. 28 U.S.C.A. §§ 1332, 1441(a); *Jeter v. Orkin Exterminating Co.*, 84 F.Supp.2d 1334, 1337 (M.D.Ala.2000); *see also, Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1360 (11th Cir.1996); *but see, Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir.2000) (abrogating *Tapscott* on different grounds).

The Defendants do not argue that Plaintiff's complaint fails to state a claim against Wound Therapy, under the AEMLD. Rather, Defendants argue that, based on the undisputed facts, Wound Therapy can not be held liable for Plaintiff's injuries because there is no causal relationship between Wound Therapy's ac-

1. In Henry Fulgham's affidavit, he states that Wound Therapy had no knowledge of any defects associated with the latex gloves manufactured by Acme. Although Plaintiff's brief attempts to impute such knowledge to Wound Therapy by citing an affirmative defense proffered by another defendant, the Court finds that to be an inadequate response to Fulgham's affidavit.

tions and the Plaintiff's injuries. The Court agrees.

## ALABAMA'S EXTENDED MANUFACTURER'S LIABILITY DOCTRINE [2]

■ In order to facilitate an understanding of this Court's analysis, a brief history of the AEMLD is required. The Alabama Supreme Court first established the AEMLD in *Casrell v. Altec Industries, Inc.*, 335 So.2d 128 (Ala.1976), and *Atkins v. American Motors Corp.*, 335 So.2d 134 (Ala.1976). Under this doctrine, "a manufacturer, or supplier, or seller, who markets a product not reasonably safe when applied to its intended use in the usual and customary manner, constitutes negligence as a Matter of law." *Casrell*, 335 So.2d at 132.

■ To establish liability under the AEMLD, a plaintiff must prove:

(1) he suffered injury or damages to himself or his property by one who sells a product in a defective condition unreasonably dangerous to the plaintiff as the ultimate user or consumer, if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) Showing these elements, the plaintiff has proved a prima facie case although

(a) the seller has exercised all possible care in the preparation and sale of his product, and

(b) the user or consumer has not bought the product from, or entered into any contractual relation with, the seller.

*Casrell*, 335 So.2d at 132–33; *see also, Atkins*, 335 So.2d at 141.

As explained in, *Pitts v. Dow Chemical Co.*,

[w]hile the AEMLD has much in common with the doctrine of strict liability in tort found in § 402A of the Restatement (Second) of Torts (1965), it is more accurately described as a hybrid of strict liability and traditional negligence concepts. *Casrell*, 335 So.2d at 132; *Atkins*, 335 So.2d at 139. On the one hand, the AEMLD is akin to strict liability because selling an unreasonably dangerous product—that is, a defective product—is deemed to be negligent as a matter of law: "[l]iability ... attaches solely because the defendant has exposed expected users of a product not reasonably safe to unreasonable risks." *Atkins*, 335 So.2d at 141. On the other hand, in contrast to the purely "no-fault" version of strict liability found in the Restatement, the AEMLD retains various affirmative defenses, including contributory negligence, assumption of the risk, and, under certain circumstances, *the lack of a causal relation. Casrell*, 335 So.2d at 134; *Atkins*, 335 So.2d at 143.

(emphasis added) 859 F.Supp. 543 (M.D.Ala.1994).

*"As long as there is a causal relationship* between the defendant's conduct and the defective product, he is held liable because he has created an unreasonable risk of harm. Liability—subject to allowable legal defenses—attaches solely because the defendants have exposed expected users of a product not reasonably safe to unreasonable risks. This is morally and legally correct." (emphasis added) *Casrell*, 335 So.2d at 132.

---

**2.** Plaintiff's complaint also asserts claims of negligence, wantonness, and breach of warranty. Plaintiff's have not and can not show that these causes of action are not subsumed by AEMLD. *See e.g., Veal v. Teleflex, Inc.*, 586 So.2d 188, 190–191 (Ala.1991) (Plaintiff's defective product claim held to be a claim under AEMLD and, thus, trial court did not err in refusing to charge the jury on negligence and wantonness.); *Pitts v. Dow Chemical Co.*, 859 F.Supp. 543, 550–51 (M.D.Ala.1994) (Plain-

tiff's negligence claim related to an alleged unreasonably unsafe product held not to state a claim distinct from AEMLD.); *Johnson v. General Motors Corp.*, Civil Action No. CV–97–0046–BH–C (U.S.Dist.Ct.S.Dist.Ala.1997) (Plaintiff's failure to warn claim, and breach of warranty claim, both subsumed by the AEMLD.). Accordingly, this Court will only address whether Plaintiff has presented a colorable claim under the AEMLD.

## AFFIRMATIVE DEFENSES

In both *Casrell* and *Atkins,* the Supreme Court of Alabama made much ado over the issue of allowable affirmative defenses. According to the Justices writing those opinions, it was clear that the allowance of certain affirmative defenses was critical to distinguish the Alabama rule from the rule stated in Restatement (2nd) of Torts § 402A. Not only do both opinions contain a section expressly dedicated to "Defenses", but the entire discussion of the AEMLD is littered with references to affirmative defenses such as 'lack of a causal relation'. *Casrell,* 335 So.2d at 132; *Atkins,* 335 So.2d at 137, 139, 140.[3] It is the affirmative defense known as "lack of causal relation" which is at the heart of the instant case. Although both parties agree that such an affirmative defense is available to certain defendants, the question before this Court is whether the Defendant Wound Therapy may avail itself of this defense.

### Lack of Causal Relation Defense

"The defendant may establish that there is no causal relation in fact between his activities in connection with handling the product and its defective condition. For example, the defendant may show that he is in the business of either distributing or processing for distribution finished products; he received a product already in a defective condition; he did not contribute to this defective condition; he had neither knowledge of the defective condition, nor an opportunity to inspect the product which

was superior to the knowledge or opportunity of the consumer."

*Atkins v. American Motors Corp.,* 335 So.2d 134, 143 (Ala.1976).[4]

■ However, this lack of causal relation defense is not available to a "defendant who distributes a product under his own trade name." *Id.* (citing *Sears, Roebuck & Co. v. Morris,* 273 Ala. 218, 136 So.2d 883 (1961)). The court in *Sears* and the cases which would follow, relied upon the rule of law stated in the Restatement of Torts § 400: " 'One who puts out as his own product a chattel manufactured by another is subject to the same liability as though he were its manufacturer.' " *Sears,* 273 Ala. 218, 136 So.2d 883 at 885 (quoting Restatement of Torts § 400). As stated by the Court of Appeals of Indiana,

"[t]he reason for imposing such liability is not hard to find. When a vendor puts his name *exclusively* on a product, *in no way indicating that it is the product of another,* the public is induced to believe that the vendor was the manufacturer of the product. This belief causes the public to rely upon the skill of the vendor. When products are held out in this manner, the ultimate purchaser has no available means of ascertaining who is the true manufacturer. By this act of concealment, the vendor vouches for the product and assumes the manufacturer's responsibility as his own."

(emphasis added) *Dudley Sports Co. v. Schmitt,* 151 Ind.App. 217, 279 N.E.2d 266 (1972).

3. "As we shall later develop, the practical distinction, then, between our holding and the Restatement is that our holding will allow certain affirmative defenses not recognized by the Restatement's no-fault concept of liability." *Atkins,* 335 So.2d at 137–38. "[I]n retrospect, our analysis ... causes us to take exception to two fundamental aspects of the Restatement's concept of strict liability: (1) the no-fault precept which imposes liability equally on all 'sellers' without regard to culpability *causally related* in fact to the defective condition of the product...." (emphasis added) *Atkins,* 335 So.2d at 138. "Vital to the

fault concept, of course, are the allowable defenses which are discussed in a later section of this opinion." *Atkins,* 335 So.2d at 139.

4. *See also Casrell,* 335 So.2d at 134 ("Moreover, the defendant may affirmatively show that it did not contribute to the defective condition, had no knowledge of it, and had no opportunity to inspect the product. In other words, there was no causal relation in, fact between his activities in handling the product, and its defective condition.")

When the Supreme Court of Alabama established the Alabama Extended Manufacturer's Liability Doctrine, it specifically relied on the holding in *Sears, Roebuck v. Morris*, 273 Ala. 218, 136 So.2d 883 (1961). *Atkins*, 335 So.2d at 140, 143; *Casrell*, 335 So.2d at 132, 134. Both cases, *Casrell* and *Atkins*, cite *Sears* for the proposition that this particular defense is unavailable to a defendant who distributes a product as if it were his own. *Atkins*, 335 So.2d at 143; *Casrell*, 335 So.2d at 134. By specifically relying on *Sears*, the *Casrell* and *Atkins* courts not only adopted the rule of law stated therein, but also adopted the rationale for that rule.

### Reasoning Behind the Rule

In *Sears*, the Supreme Court of Alabama not only adopted the rule of law stated in RESTATEMENT OF TORTS § 400 (liability of one who puts out a product as his own), but the court also specifically incorporated Comment (d) of that Section for the reasoning behind the rule. *Sears* 136 So.2d at 885. Comment (d) reads, "The rule stated in this Section applies only where the chattel is so put out as to lead those who use it to believe that it is the product of him who puts it out. The fact that the chattel is sold under the name of the person selling it *may* be sufficient to induce such a belief, *but this is not always so, as where the goods are marked as made for the seller, without stating the name of the maker*, or where the seller is known to carry on only a retail business." (emphasis added) RESTATEMENT OF TORTS § 400 (1938) (Comment (d)).[5]

To date, this is still the law in Alabama, and the Supreme Court of Alabama has not yet altered the law or its reasoning to conform with the new, liberalized, Com-

ment (d) following RESTATEMENT (2ND) OF TORTS § 400.

■ Based on Comment (d) of the original RESTATEMENT OF TORTS § 400, and the Alabama Supreme Court's reliance thereupon, it is clear that Wound Therapy will not be liable under Alabama law as if it were the manufacturer of the "sterile dressing kit" or the latex gloves contained therein. This is so because the product in question states on its face that the product was "Made Exclusively For: Wound Therapy Specialist". According to the above quoted Comment (d), this statement, standing alone, would be enough to render the rule of law found in RESTATEMENT OF TORTS § 400 inapplicable. However, the distributor in this case went one step further by clearly and accurately identifying the actual manufacturer of the product.

With this in mind, it is the finding of the Court that Wound Therapy, as a matter of law, did not put out the "sterile dressing kit" as its own product. *See Atkins*, 335 So.2d 134; *Sears* 136 So.2d at 885; RESTATEMENT OF TORTS § 400 (1938) (Comment (d)). Accordingly, the latex gloves, found within the kit, also were not put out by Wound Therapy as its own product. *Id.* Thus, it is permissible for Wound Therapy to utilize the "lack of causal relationship" defense in this action. *Id.*

■ Furthermore, based on the undisputed facts, the Court finds that Wound Therapy can not be held liable for any injury to the Plaintiff based on the alleged defect of the latex gloves sold by Wound Therapy because there exists no causal relationship between the actions of Wound Therapy and Plaintiff's alleged injury. *See Fleming Farms v. Dixie Ag Supply, Inc.*, 631 So.2d 922 (Ala.1994); *See also Atkins*

---

5. The Court notes that the Defendants erroneously base their arguments on the RESTATEMENT (2ND) OF TORTS § 400 and its Comment (d), rather than the original RESTATEMENT OF TORTS and its comments. Comment (d), of the RESTATEMENT (2ND) OF TORTS § 400, is substantially different from the comment found in the original RESTATEMENT OF TORTS. However, it was the *original* RESTATEMENT OF TORTS § 400,

and its Comment (d), that the Supreme Court of Alabama relied upon for its reasoning in *Sears*. *Sears* 136 So.2d at 885. Despite the American Law Institute's amendments which make the comments much more liberal (and confusing), this Court will only consider that which the Alabama Supreme Court relied upon and pointed to as its reasoning.

*v. American Motors Corp.*, 335 So.2d 134 (Ala.1976).

Based on the above legal analysis, and after review of all pertinent portions of the record, it is the determination of this Court that Plaintiff's claims under the Alabama Extended Manufacturer's Liability Doctrine (Count One), are due to be and are hereby **DISMISSED** inasmuch as they relate to Wound Therapy. Likewise, because Plaintiff's Negligence, Wantonness, and Breach of Warranty claims are incorporated into the AEMLD claim, the Court holds that Counts Two, Three and Four are also due to be and are hereby **DISMISSED** inasmuch as they relate to Wound Therapy.

## FRAUDULENT SUPPRESSION

■ Plaintiff alleges in Counts Five and Six that the Defendants fraudulently suppressed material facts and conspired with one another to do so.

■ To support her fraudulent suppression claim against Wound Therapy, Plaintiff would have to establish: (1) that Wound Therapy had a duty to disclose an existing material fact; (2) that Wound Therapy suppressed this material fact; (3) that Wound Therapy's suppression of this fact induced her to act or to refrain from acting; and (4) that she suffered actual damage as a proximate result. *State Farm Fire & Casualty v. Owen*, 729 So.2d 834, 837 (Ala.1998). In addition, Wound Therapy can be liable for suppression only if it had knowledge of the material fact it allegedly suppressed. *Id.* This Court has already found as a matter of fact that Wound Therapy had no such knowledge of any alleged defect in the latex gloves it distributed. (Undisputed Fact #8.) Therefore, Wound Therapy can not be held liable under Plaintiff's fraudulent suppression claim. Wherefore, Plaintiff's Count Five is due to be and is hereby DISMISSED inasmuch as it relates to Wound Therapy.

■ Count Six of Plaintiff's Complaint alleges a conspiracy to commit fraud. Without a viable cause of action based on fraud, Plaintiff cannot maintain a cause of action alleging conspiracy to commit fraud. *See Drill Parts & Serv. Co. v. Joy Mfg.*, 619 So.2d 1280, 1290 (Ala.1993); *Allied Supply Co. v. Brown*, 585 So.2d 33,36 (Ala. 1991). Wherefore, Count Six of Plaintiff's Complaint is also due to be and is hereby **DISMISSED** inasmuch as it relates to Wound Therapy.

## CONCLUSION

After a full and proper review of all pertinent portions of the record and based on the above legal analysis, it is the holding of this Court that Wound Therapy was fraudulently joined in this action, and therefore is due to be and is hereby **DISMISSED**. Accordingly, Wound Therapy's citizenship in the State of Alabama can not be considered when determining whether complete diversity exists between the Defendants and the Plaintiff. Thus, the Court finds that complete diversity does indeed exist and it was proper to remove this case to federal court. Wherefore, Plaintiff's motion to remand this action to the Circuit Court of Mobile County, Alabama, is due to be and is hereby **DENIED**.