General Electric Company (hereinafter G.E.) appeals from unfavorable judgments in two personal injury actions.
Eddie Mack was employed as an electrical lineman for the City of Opp. While attempting to replace an insulator he was injured by electricity which arced between the two pieces of the broken insulator. He sustained second and third degree burns over 35% of his body.
The insulator had been manufactured over twenty-five years earlier by Locke Insulators, a wholly owned subsidiary of G.E., or by Locke Division of G.E.
The metal base of the insulator was attached to the frame of a substation and the metal cap was attached to a hot line which contained high voltage electricity. The arc occurred when the current of electricity was caused to flow from or through the cap of the insulator, which was attached to the energized line, to an exposed iron pin in the base portion of the insulator. Before the separation occurred, the base and extended pin were insulated from the cap by porcelain. The porcelain prevented the two metal parts from touching. The metal pin extended up through the porcelain to a point inside the insulator and was in the same geometrical plane with the metal cap. The porcelain cracked, causing the separation which exposed the metal pin to the metal portion of the cap.
The insulator also had holes or perforations extending through the porcelain in the cap which, according to the plaintiff's theory, allowed the current to leak. There was expert testimony to the effect that these holes occurred during manufacture and proper testing might have revealed them. There was further testimony that an insulator *Page 455 
of this type would often separate, or fail, while in use. The inference is that when this particular type of insulator failed it tended to unduly expose the metal pin and created a hazardous condition. There was other testimony that at the time this insulator was designed, other designs were known and in existence which would not permit this pin to be exposed upon separation.
At the time of the injury Mack was twenty-four years of age. He had never changed a hot insulator in a substation before, but he had changed other type insulators while the power was on. He voluntarily elected to do this work. He discussed the problem with his supervisors, and while they did not order him to do this work, they told him they would like to have the work done hot, so as to prevent a power outage.
Mack and his wife brought suit against G.E. and the Alabama Electric Cooperative, Inc. They alleged that G.E. had negligently designed, inspected, tested or manufactured the insulator involved in the accident and that, under the Alabama Extended Manufacturer's Liability Doctrine, (AEMLD), the insulator was defective.
G.E. contended that the AEMLD did not apply to a product sold twenty-five years prior to its adoption. In addition, G.E. pleaded that Eddie Mack had assumed the risk and was contributorily negligent.
The jury returned a verdict in favor of Eddie Mack for $85,000 and $40,000 for Carrie Mack against G.E. and found for the defendant Alabama Electric Cooperative. On appeal, the following issues are raised:
 1. It was error to submit the case to the jury under the AEMLD because
 (a) the allegedly defective product was designed, manufactured and sold twenty-five years before the accident;
 (b) the allegedly defective product was not in the same condition as when it left the manufacturer;
 (c) the plaintiff, Eddie Mack had assumed the risk and was contributorily negligent in changing out the insulator with the substation power on.
 2. It was error to submit plaintiff's claims of negligent/defective testing and inspection to the jury where the issue of testing was not relevant to determination of causation of the accident.
 3. It was error to submit the case to the jury on a failure to warn theory since there was no evidence that a warning was necessary, appropriate or feasible.
 4. It was error to identify the parties requesting certain jury charges and in informing the jury that one of G.E.'s charges was erroneous.
5. It was error to admit into evidence:
 (a) an insulator which was not listed in plaintiff's response to defendant's request to produce and was not shown to defendant until after being introduced into evidence.
 (b) 114 color photographs of the plaintiff's injuries.
 6. It was error to refuse to allow the defendant's counsel to read to the jury, in closing argument, portions of Eddie Mack's deposition.
In Casrell v. Altec Industries, Inc., 335 So.2d 128 (Ala. 1976), and Atkins v. American Motors Corp., 335 So.2d 134 (Ala. 1976), this Court adopted what is now known as the AEMLD. G.E. contends that the AEMLD does not apply to a product manufactured prior to the Casrell and Atkins decisions.
We disagree. Trimble v. Bramco Products, Inc.,351 So.2d 1357, 1361 (Ala. 1977). In Beloit Corp. v. Harrell,339 So.2d 992 (Ala. 1976), this Court implicitly applied the AEMLD to a machine sold by a manufacturer in 1959. Similarly, in Jett v.Honda Manufacturing Company, LTD., 339 So.2d 66 (Ala. 1976), we reversed and remanded the dismissal of a wrongful death action, in which a motorcycle manufactured prior to the adoption of the AEMLD was involved, for reconsideration in light of our decisions in Casrell and Atkins.
G.E. attempts to escape liability under the theory that the product was not in the same condition when Mack was injured as it was when originally sold. It contends *Page 456 
that because the insulator separated, G.E. should not be responsible. It is true that Casrell requires, for the manufacturer to be liable, that the product must "reach the user, or consumer, without substantial change." As heretofore stated, however, there was expert testimony to the effect that insulators of this type often separate, and that separation is expected on occasion and this was known in the industry at the time the product was manufactured. Thus, G.E. was aware of the product's probable use and that should it separate, it would have to be replaced.
Moreover, the plaintiffs' contention regarding the defective nature of the product was not that it had improperly separated, but that it was designed in such a way that when replacement became necessary a condition was caused to exist which was unreasonably dangerous. Stated differently, if the product had been properly designed there was at least a scintilla of evidence that it could have been changed without incident. We consider, under the circumstances of this case, that a jury question was presented. In this connection, the jury was properly charged as follows:
 15. The Court charges you, members of the jury, that you are not authorized to impose liability in this case upon the defendant, General Electric Company, on account of any dangerous or unsafe condition of the insulator resulting solely from events occurring after the insulator left the possession of the defendant.
 16. The Court charges you, members of the jury, that unless you are reasonably satisfied from the evidence in this case that the insulator manufactured by General Electric Company was dangerous and unsafe at the time it left General Electric Company's possession, then your verdict in this case must be for General Electric Company.
We are also of the opinion that assumption of the risk and contributory negligence were for the jury. We cannot say as a matter of law that Mack, under the standard of a reasonable and prudent person, could have appreciated the risk in view of the internal defective nature of the product.
G.E.'s next contention is that the trial court erred in allowing the claim to go to the jury on the theory that G.E. negligently failed to inspect or test the insulator, thereby failing to discover perforations in the cap. Two reasons are stated: (1) the only evidence concerning testing was that G.E. had made tests; and (2) the only evidence was to the effect that this defect did not cause Mack's injury.
There was conflicting testimony given by both G.E.'s and Mack's expert witnesses regarding proper testing and whether these perforations would have been discovered if the insulator had been properly tested. It is within the province of the jury to decide how the arc occurred and whether these perforations were involved.
A manufacturer is not under a duty to warn a user of every danger which may exist during the use of a product. A warning is to inform the user of a danger of which he was not aware. Thus, a manufacturer has no duty to warn when the danger is obvious. Ford Motor Co. v. Rodgers, 337 So.2d 736, 740 (Ala. 1976). Mack testified that he was not warned of the dangers presented by the exposed metal pin and he was unaware of the pin. G.E. contends that the evidence was clear that the pin was visible and could have been seen by Mack, thereby obviating the necessity of a warning. Under the facts presented, we believe a jury question was presented.
The scope and extent of cross-examination is vested in the sound discretion of the trial court, not reviewable unless there has been abuse. Moon v. Nolen, 294 Ala. 454,318 So.2d 690 (1975); Bridges v. State, 284 Ala. 412, 225 So.2d 821
(1969); Seals v. State, 282 Ala. 586, 213 So.2d 645 (1968). Mack's use of the newer model insulator was entirely proper in his attempt to discredit, on cross-examination, G.E.'s expert witness.
The 114 color photographs of Mack's injuries were part of his hospital record. They showed the extent of his injuries *Page 457 
and the progress of his recovery following the accident, and were properly admitted. Liberty Nat'l Life Ins. Co. v. Reid,276 Ala. 25, 158 So.2d 667 (1963); Anderson v. State,35 Ala. App. 111, 44 So.2d 266 (1950).
We have reviewed each of G.E.'s other contentions of error and consider them to be either free of error, or harmless under the circumstances.
The judgments are due to be affirmed.
AFFIRMED.
TORBERT, C.J., and BLOODWORTH, FAULKNER and EMBRY, JJ., concur.