Donnell **BROWNLEE**, a minor who sues by and through his father and next friend, John Brownlee and John Brownlee, Plaintiffs-Appellants,

v.

**LOUISVILLE VARNISH COMPANY et al., Defendants-Appellees.**

No. 80–7035.

United States Court of Appeals, Fifth Circuit. Unit B

April 3, 1981.

Hare, Wynn, Newell & Newton, Francis H. Hare, Jr., Birmingham, Ala., for plaintiffs-appellants.

McDaniel, Hall, Parsons & Conerly, Jack J. Hall, Birmingham, Ala., for Louisville Varnish Co.

Huie, Fernambucq, Stewart & Smith, Eugene De Martenson, Birmingham, Ala., for Sargent Paint Co.

Davies, Williams & Wallace, John D. Gleissner and Joe R. Wallace, Birmingham, Ala., for Crown, Cork & Seal Co.

Before FAY, KRAVITCH and HATCHETT, Circuit Judges.

FAY, Circuit Judge:

Appellant, a child, appeals the District Court's grant of summary judgment in favor of the appellees, certain manufacturers and distributors of aerosol spray paint cans, on his products liability action for personal injuries caused by the explosion of an aerosol paint can. We find that summary judgment was erroneously granted and reverse.

### I

On February 15, 1976 appellant, Donnell Brownlee a five year old boy, was burned over his face, chest, arms and hand when an aerosol paint can which he had put into a trash fire exploded spewing hot burning paint onto his clothing.[1] On the morning of the incident, appellant, his mother, older brother and younger sister gathered up newspaper which had been blown into the backyard. After putting the debris into their trash can in the alley adjacent to their house, Mrs. Brownlee put on top a paper bag containing a partially filled aerosol spray paint can as ballast against the wind. This can had been disposed of in the trash can the previous day by Mrs. Brownlee after cleaning out some cabinets. Subsequent to the backyard cleanup Mrs. Brownlee returned to the house while the children played in the backyard. About a half hour later there was an explosion, Mrs. Brownlee rushed out of her kitchen and found the appellant in flames from the waist up. Appellant's injuries are extensive and severe.

---

1. Mrs. Brownlee testified at her deposition that enroute to the hospital, the appellant told her that he thought he was dying and that he threw the can which blew up and injured him into the fire. Mrs. Brownlee also testified that her eldest son, John, confirmed appellant's declaration and further that appellant had also gone into the house to get the matches with which he started the fire. *Record* at 100–02, 106, 108, 144.

A conflicting account was given by Lieutenant Vildibill of the Birmingham Fire Department. He testified, by deposition, that Mrs. Brownlee stated to him during his investigation of the incident, that she had started the trash fire and had placed the can in the fire. *Record* at 51, 56, 67. However, since the case was decided on defendant's motion for summary judgment our account of the incident is drawn principally from Mrs. Brownlee's deposition. *See, e. g., United States v. Diebold, Inc.*, 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Time, Inc. v. Ragano*, 427 F.2d 219, 221 (5th Cir. 1970).

The product involved is alleged to be defective by virtue of both its potential for explosion when exposed to heat and the availability of economical and effective design alternatives which would have significantly reduced the severity and frequency of this hazard. The appellees are aware of the hazard of explosion and rather than redesign their product they have provided a warning on their label.[2] Mrs. Brownlee testified that she, also, was aware of the hazard and had read the warning provided on the can prior to the explosion.

Appellant alleged four grounds of recovery: (1) negligence in the design and/or manufacture of the can, (2) the application of the Alabama Extended Manufacturer's Liability Doctrine (AEMLD) to the design and manufacture of the can, (3) breach of the implied warranty of merchantability and (4) failure to warn. The District Court found the warnings to be not only adequate and sufficient but concluded also that any deficiencies in the warnings were not the proximate cause of the accident. The court disposed of the other three allegations by concluding as a matter of law, that since the product "was being used in a manner not intended by [the appellees] or by the ordinary purchaser" when it was placed in the fire, it was not unreasonably dangerous.[3] *Record* at 352, 354, 355.

## II

The principal issue joined on appeal is the trial court's final conclusion that the product in question was not unreasonably dangerous for its intended uses as a matter of law. Appellant argues that "intended use"

2. READ DIRECTIONS CAREFULLY!
Shake well, listen for rattling of mixing ball, co'   · shaking for one minute. Hold container 12-16 inches from surface. Rele.   rayhead after each stroke and overlap. Apply two thin coats rather than on.. heavy coat. If product is chilled, bring can to room temperature.
After spraying, turn can upside down and press sprayhead for about three seconds. This cleans paint from tube and valve.

Clean surface to be finished to remove wax, grease or polish. Spray at room temperature.
DO NOT USE OR STORE IN AREAS WHERE HEAT ABOVE 120° F., SPARKS OR OPEN FLAME MAY BE PRESENT. DO NOT PUNCTURE OR INCINERATE. EXPOSURE TO HEAT OR PROLONGED EXPOSURE TO SUN MAY CAUSE BURSTING. AVOID PROLONGED CONTACT WITH SKIN AND BREATHING OF VAPOR OR SPRAY MIST.
USE WITH ADEQUATE VENTILATION
KEEP OUT OF REACH OF CHILDREN
DANGER. Harmful or fatal if swallowed. If swallowed, do not induce vomiting. Call Physician immediately.
NO LEAD IN FORMULATION

CONTAINS PETROLEUM DISTILLATES

3. In regards to the AEMLD count, the Court based its decision on a *totality of factors* finding that "the aerosol paint product met the reasonable expectations of safety of an ordinary consumer and by the actual consumer in this case, the warning on that product made the hazard apparent to consumers, and the can was not dangerous when put to its intended use." *Record* at 353.

is equal and interchangeable with "foreseeable use" under Alabama negligence and AEMLD jurisprudence. The appellees contend that at the time of the accident the aerosol paint can was not being used in the ordinary manner for its intended purposes, taken from the viewpoint of either the purchaser or the manufacturer. Therefore, the product could not be unreasonably dangerous for its intended use under Alabama law. They also assert that the appellant is confusing foreseeable use with foreseeable risk of harm in his arguments. Finally, they rely heavily on the adequacy of the warning placed on the product to obviate their duty to better design the spray can. While the arguments of counsel and the erudite opinion of the trial court are thorough and well reasoned, we find that the proper interpretation of Alabama law is much simpler than it appears to the litigants.

■ The decisions of *Casrell v. Altec Industries, Inc.*, 335 So.2d 128 (Ala.1976) and *Atkins v. American Motors Corp.*, 335 So.2d 134 (Ala.1976), announced the adoption of the Alabama Extended Manufacturer's Liability Doctrine. While this doctrine is closely aligned to the theories propounded in the Restatement of Torts 2d, § 402A and § 398, the Alabama Supreme Court did not adopt a strict liability theory based upon social or economic justifications. Rather, the Court retained the requirement for fault. *Casrell*, 335 So.2d at 132; *Atkins*, 335 So.2d at 139. The gravamen of the action is the fault of the manufacturer in placing a product on the market which is in an unreasonably unsafe or dangerous condition when put to its intended use. *Id.* at 140. The practical consequence of this distinction is the availability of various affirmative defenses, specifically (1) lack of casual relation, (2) assumption of the risk in the instance of an unavoidable unsafe product and adequate warning being provided and (3) contributory negligence as in the case of "plaintiff's misuse of the product." *Id.* at 143. *See McCaleb v. Mackey Paint Mfg. Co., Inc.*, 343 So.2d 511, 514 (Ala.1977). "Ordinarily, the conduct of the plaintiff, in his use of an alleged defective product, is a factual issue for the jury." *Beloit Corp. v. Harrell*, 339 So.2d 992, 997 (Ala.1976). *See Ford Motor Co. v. Rodgers*, 337 So.2d 736, 738–39 (Ala. 1976); *General Electric Co. v. Mack*, 375 So.2d 452, 456 (Ala.1979). This issue can be taken from the jury only where it is undisputed that the product involved was not put to its intended use, for example, if flammable paint thinner is used in open vats as a reducing agent to clean bumpers dipped into it. *McCaleb v. Mackey Paint Mfg. Co., Inc.*, 343 So.2d 511, 513–14 (Ala.1977).

■■ In determining whether a product was put to an "intended use", the Court must be careful not to construe the phrase so strictly as to actually resolve questions of contributory negligence or assumption of the risk without submitting those issues to the jury. *Cf. General Electric Co. v. Mack*, 375 So.2d 452, 456 (Ala.1979). *See generally*, Noel, *Defective Products: Abnormal Use, Contributory Negligence and Assumption of the Risk* 25 Vand.L.Rev. 93 (1968). As admitted by counsel for the appellees in oral argument before this Court, the disposal of aerosol cans is an "intended use" or "incident to an intended use" of the product.[4] In considering what could be characterized as the intended disposal of the product, it is significant that the aerosol cans in question were marketed generally for household consumption and not for industrial or professional use. *Compare De Santis*

---

4. *See Sears, Roebuck & Co. v. Morris*, 273 Ala. 218, 136 So.2d 883, 885 (1961) (disassembly and reassembly of two part diecast wheel is normal and customary use of trailer). *Cf. General Electric Co. v. Mack*, 375 So.2d 452, 456 (Ala.1979) (separation of porcelain insulator for high voltage electrical wires and replacement within contemplation of probable use so that

product should be designed as to negate unreasonably dangerous condition on replacement). *LeBouef v. Goodyear Tire & Rubber Co.*, 623 F.2d 985, 988–89 (5th Cir. 1980) (driving a Cougar at 100 M.P.H., a capacity exploited by manufacturer in marketing, is not abnormal use of product).

v. Parker, Feeders, Inc., 547 F.2d 357, 361–62 (7th Cir.) with Helene Curtis Industries, Inc. v. Pruitt, 385 F.2d 841, 847, 855–57 (5th Cir. 1967). Household disposal is frequently accomplished by placing spent or partially used products in the family trash can. Indeed, the trial court correctly recognized that disposal in a closed trash can would constitute an "intended use" of the product by the intended consumer. Record, at 353, n.4. Yet the trial court did not stop with this conclusion, but went further than was proper.

The Court concluded that the placing of the aerosol can in an open fire, the direct cause of the plaintiff's injuries, was not an "intended use" of the product. Record, at 354. Presumably, by this the Court meant that such action was not an "intended disposal". However correct this may be, such conclusion at summary judgment was unseasonable. In making it the trial court either passed over or confused several issues that were properly the province of the jury.

The intended user of the product, Mrs. Brownlee, used it to paint some trim in her bathroom, disposing of the can, as would be expected, in the family trash can. What happened subsequent to this is difficult to characterize, as a matter of law, as an act of disposal instead of a dangerous game played by an infant. Such characterization is for the trier of fact.

Household trash cans are subject to the risk of fire hazards whether set, as here, by an infant incapable of contributory negligence, see Bayshore Railroad Co. v. Harris, 67 Ala. 6 (1880); Sheffield Co. v. Harris, 183 Ala. 357, 61 So. 88, 91 (1912), or by an unaware adult, or a careless passerby with a lit cigarette or by something as freakish as a broken utility line. See also, Spruill v. Boyle-Midway Inc., 308 F.2d 79, 83–84 (4th Cir. 1962). Nor is the risk of injury from such fire hazard limited to the household. A jury might well find that the contents of household trash cans are removed to open bins, dumps, landfills and other areas where burning often occurs in the disposal process thereby threatening disposal workers and supervisors as well as the chance child playing in these areas. In light of the evidence that for a fraction of a cent a relief valve could have been incorporated into the aerosol can's design which would have significantly reduced the possibility of an explosion under any of the aforementioned circumstances, a jury could conclude that the product was unreasonably dangerous for its intended use and disposal.[5] This is true, especially in light of the gravamen of the AEMLD action being the fault of the manufacturer in deciding to market such a product despite available alternatives with reduced risks. Atkins, 335 So.2d at 140. Further, if the risk of explosion and spraying of hot burning paint could have been diminished or eliminated by emptying the can of unused paint and reducing the pressure inside it prior to disposal, an aspect unanswered by counsel at oral argument, then a jury might conclude that the warning placed on the can was also inadequate.[6] Therefore, we must conclude that the trial court's grant of summary judgment was in error.

### III

Since the differences in the cause of actions for negligence, breach of warranty and that under AEMLD do not appear per-

---

**5.** See Altorfer Bros. Co. v. Green, 236 Ala. 427, 183 So. 415, 418 (Ala.1938) interpreted by Norton Co. v. Harrelson, 278 Ala. 85, 176 So.2d 18, 21 (Ala.1965) (defective design of safety release device).

The evaluation of a design hazard necessarily involves a weighing of danger against utility which implicates the technical and economic feasibility and practicability of safer designs. See Helene Curtis Indus. Inc. v. Pruitt, 385 F.2d 841, 850 (5th Cir. 1967); Ross v. Up-Right, Inc., 402 F.2d 943, 946 (5th Cir. 1968); Keeton, Products Liability—Design Hazards and the Meaning of Defect, 10 Cumb.L.Rev. 293, 310–11, 313–14 (1979).

**6.** The warning on the label may also be inadequate simply because it does not indicate how the product is to be properly disposed of at all.

tinent to this appeal on the issue joined, *see Sears, Roebuck & Co. v. Morris*, 273 Ala. 218, 136 So.2d 883 (1961); *Casrell v. Altec Industries, Inc.*, 335 So.2d 128, 133 (Ala. 1976), the previous discussion is applicable to those counts as well. A review of the record convinces us that genuine issues of material fact exist that can only properly be resolved by a jury under suitable instructions of the court. Although summary procedures remain a valuable tool, we conclude they are not appropriate for disposing of the claims made here.

The summary judgment is REVERSED and the matter REMANDED for proceedings consistent with this opinion.

