958 F.2d 1537
 Prod.Liab.Rep. (CCH) P 13,150
Gregory S. GOREE, Plaintiff-Appellant,
Renee Goree, Plaintiff,
v.
WINNEBAGO INDUSTRIES, INC., Defendant-Appellee,
General Motors Corporation, Chevrolet Motor Division, a
corporation, Defendants.
 No. 91-7121.
 United States Court of Appeals,
Eleventh Circuit.
 April 22, 1992.
 
 David McCall Andres, Tuscaloosa, Ala., for plaintiff-appellant.
 Samuel H. Franklin, Mac M. Moorer, Lightfoot, Franklin, White & Lucas, Birmingham, Ala., for defendant-appellee.
 Appeal from the United States District Court for the Northern District of Alabama.
 Before KRAVITCH, Circuit Judge, and HENDERSON and CLARK*, Senior Circuit Judges.
 PER CURIAM:
 
 
 1
 The plaintiff-appellant, Gregory S. Goree, filed this action for damages pursuant to the Alabama Extended Manufacturer's Liability Doctrine ("AEMLD") against Winnebago Industries, Inc. ("Winnebago") for burns suffered to his feet while driving his Winnebago motor home. Following the close of discovery, the United States District Court for the Northern District of Alabama granted summary judgment in favor of Winnebago and entered final judgment on its behalf. On appeal, Goree contends that the court erred by concluding that (1) he could not establish liability under the AEMLD without first presenting expert testimony to prove the existence of a defect in the product, (2) because he was a paraplegic and had no feeling in his feet, he was not an "ordinary consumer" of the motor home within the meaning of Alabama law, and (3) the installation of hand controls to the motor home constituted a substantial modification of the vehicle so as to remove Goree's injury from the scope of Winnebago's liability. We conclude that there remain genuine issues of material fact that must be resolved by a jury, and therefore reverse the district court's grant of summary judgment.
 
 
 2
 An order granting summary judgment is subject to independent review on appeal. Thrasher v. State Farm Fire and Casualty Co., 734 F.2d 637 (11th Cir.1984). The party moving for summary judgment bears the initial burden of "identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any ...' " which show the lack of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(c)). Summary judgment is then appropriate as a matter of law against the nonmoving party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322, 106 S.Ct. at 2552. In reviewing whether the nonmoving party has met his burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Instead, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." Id. (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-9, 90 S.Ct. 1598, 1608-9, 26 L.Ed.2d 142 (1970)).
 
 I.
 
 3
 The motor home that is the subject matter of this litigation is a 1988 Winnebago Chieftain. General Motors Corporation ("General Motors") manufactured the Chieftain's chassis, which includes the frame rails, engine, transmission, wheels, tires and steering column, and sold the chassis to Winnebago. Winnebago completed the motor home by installing the body of the vehicle, including a steel floorboard underneath the driver's seat and carpeting on top of the floorboard. General Motors was not responsible for the design, manufacture or installation of the Chieftain's body.
 
 
 4
 Goree purchased the Chieftain as a used vehicle from the original purchaser in early 1989. Being a paraplegic, Goree installed hand controls to enable him to operate the motor home. On July 29, 1989, he drove the Chieftain, without wearing shoes, on a six hour trip from Memphis to Nashville, Tennessee. The floorboard became so hot that he suffered second and third degree burns to his right heel during the trip. He underwent successful skin graft surgery to treat the burns two weeks later.
 
 
 5
 Goree filed suit against General Motors and Winnebago on February 7, 1990. His complaint alleged, inter alia, that the Chieftain was defective under the AEMLD. During discovery, he identified two expert witnesses expected to testify on his behalf at trial. Both defendants deposed each witness. The first witness, Dr. Walter Schaetzle, an engineering expert, testified that his measurements of the floorboard temperatures of Goree's Chieftain were as high as one hundred and seventy-five degrees Fahrenheit above the carpeting on the driver's side. In his opinion, the installation of a heat shield between the exhaust manifold and the floorboard would lower the floorboard temperature between twenty and forty degrees, and that the cost of such a heat shield would be less than twenty-five dollars. The second expert witness, Dr. Blair Behringer, is an orthopaedic surgeon. He stated that temperatures between one hundred and eight and one hundred and ten degrees Fahrenheit will cause burn injuries to a person's foot if it is exposed to sustained heat radiation of that magnitude for a sufficient period of time. Dr. Behringer noted that a person with normal sensation to heat would probably not maintain contact with such an uncomfortably hot object long enough to incur a serious burn injury. However, he went on to state that the requisite length of exposure sufficient to sustain a burn injury decreases as the subject temperature rises. A long exposure to a relatively low temperature can cause a burn injury just as can a short exposure to a high temperature. Additionally, Dr. Behringer explained that an injury can occur at a low temperature even though the victim is not initially aware of it. In his judgment, the time it takes for a person with normal sensation to heat to incur a burn is the same as for a person, such as a paraplegic, with no sensibility to heat.
 
 
 6
 After discovery, General Motors and Winnebago each moved for summary judgment. The district court granted their motions on three grounds. First, the court held that Goree had failed to produce any expert testimony that the Chieftain was defective, and therefore could not establish a prima facie case under the AEMLD. Second, it found as a matter of law that the Chieftain was not defective because it was safe for its intended use by an ordinary consumer who could sense heat. The court held that the Chieftain was never intended to be used by a paraplegic who was not wearing shoes. Finally, the court held as a matter of law that the motor home had been substantially modified by the installation of the hand controls, and that his injuries would not have occurred but for this modification. Goree appeals only the district court judgment in favor of Winnebago. Consequently, General Motors is not a party to this appeal.
 
 II.
 
 7
 The AEMLD is a judicially developed products liability doctrine. See Sears, Roebuck & Co., Inc. v. Haven Hills Farm, Inc., 395 So.2d 991 (Ala.1981); Casrell v. Altec Indus., Inc., 335 So.2d 128 (Ala.1976). It is a modified version of strict liability that premises liability upon the sale by a manufacturer of a defective product. To establish a prima facie case against a manufacturer under the AEMLD, a plaintiff must show that (1) the defendant manufacturer sold a defective product, (2) the defect was the cause in fact of the plaintiff's injury and is traceable to the defendant, and (3) the product reached the plaintiff without substantial modification to the condition in which it was sold. Sears, Roebuck, 395 So.2d at 994.
 
 A.
 
 8
 Under the first element of the prima facie case, a defect in a product is defined as "that which renders a product 'unreasonably dangerous,' i.e., not fit for its intended purpose...." Casrell, 335 So.2d at 133. "Defective" means that "the product does not meet the reasonable expectations of an ordinary consumer as to its safety." Id. A plaintiff does not have to establish the specific defect that caused his injury, only that the product was unreasonably dangerous. Sears, Roebuck, 395 So.2d at 995.
 
 
 9
 After reviewing the record, and drawing all factual inferences in favor of Goree, we conclude that he has made a sufficient showing that the Chieftain was unreasonably dangerous to an ordinary consumer when sold by Winnebago. The testimony discloses that the temperatures generated above the carpeting of the floorboard on the driver's side were more than sixty-five degrees above that which would normally cause burn injuries. In light of Dr. Behringer's opinion that higher temperatures require a shorter period of exposure to result in harm, and that a person can be burned at lower temperatures without being aware of the injury initially, the district court improperly decided as a matter of law that the Winnebago was not defective. Goree produced sufficient evidence to present a question of fact for the jury, which is ordinarily charged with the duty to decide whether a product is unreasonably dangerous. See Entrekin v. Atlantic Richfield Co., 519 So.2d 447, 449 (Ala.1987); Casrell, 335 So.2d at 133.
 
 
 10
 We also conclude that the district court overstated its case when it held that expert testimony is always required to establish a defect under the AEMLD. While such testimony may be necessary when the product alleged to be defective is complex and technical in nature, expert testimony is not required when a jury could reasonably infer from the product's failure "under all the attendant circumstances" that its defective condition caused the plaintiff's injury. Brooks v. Colonial Chevrolet-Buick, Inc., 579 So.2d 1328 (Ala.1991); Sears, Roebuck, 395 So.2d at 995. The plaintiff establishes a prima facie case as long as he provides sufficient evidence from which the jury could deduce that the product was defective, and that his injury was caused by the defect.
 
 
 11
 Although the Winnebago Chieftain may be characterized as a complex and technical piece of machinery, Goree asserts simply that the temperatures above the floorboard rendered the Chieftain unreasonably dangerous so that it did not meet the reasonable expectations of an ordinary consumer. He does not have to show the exact cause of the high temperatures, only that the Chieftain is unreasonably dangerous. He supplied two experts whose combined testimony indicate that the Chieftain's floorboard temperatures climbed to levels capable of causing burn injuries. He also offered testimony that the defective condition could have been alleviated by the installation of a twenty-five dollar heat shield. See Brownlee v. Louisville Varnish Co., 641 F.2d 397, 401 (5th Cir. Unit B April 1981) (considering remedial alterations which might have averted injury in concluding that a jury could determine that a product was unreasonably dangerous for its intended use). Under all the facts adduced during discovery, a reasonable jury could infer without the aid of expert testimony the existence of a specific defect in the product and conclude that the Chieftain's unreasonably dangerous condition was the cause of Goree's injury.
 
 
 12
 Winnebago contends that the district court correctly held that expert testimony going directly to the existence of a specific defect is a requisite for recovery under the AEMLD. It cites Sears, Roebuck as an example of what it describes as Alabama's rejection of the exact proposition that we adopt here. In that case, a tire which the plaintiff had purchased from Sears, Roebuck & Co. exploded during use after having been driven for approximately 30,000 miles. The plaintiff alleged that Sears, Roebuck & Co. had sold the tire in a defective condition and was therefore liable under the AEMLD. The Alabama Supreme Court held that the plaintiff's mere allegation that a four and one-half month old tire had blown out while in use was not adequate proof to establish a prima facie case under the AEMLD. It observed that "[b]lowouts can be attributed to myriad causes, including not only the care with which the tires are maintained, but the conditions of the roads over which they are driven and the happenstance striking of damaging objects." Sears, Roebuck, 395 So.2d at 996.
 
 
 13
 Contrary to Winnebago's assertion, the Sears, Roebuck court did not reject the plaintiff's suit under the AEMLD because of its failure to present expert testimony to establish the existence of a defect. Instead, it found that the plaintiff had failed to produce any evidence other than the fact of the blowout from which a reasonable jury could conclude that the tire was defective. Consequently, Sears, Roebuck is distinguishable from the present case where there is adequate evidence showing a defect in the product, thereby establishing a prima facie case. Nor did the Sears, Roebuck court pretermit the pursuit of any case under the AEMLD without the use of expert testimony going to the existence of a specific defect. As we have already noted, Sears, Roebuck itself recognized that there will be certain instances under the AEMLD where a reasonable jury can infer from the attendant circumstances, without the aid of expert testimony, that a plaintiff's injuries resulted from a product's unreasonably dangerous condition. See id. at 995.
 
 B.
 
 14
 The district court further erred when it decided as a matter of law that Goree is not an ordinary consumer because of his paraplegic condition. Whether a consumer is an "ordinary consumer" depends upon whether he was a foreseeable consumer. Cf. Caudle v. Patridge, 566 So.2d 244, 246 (Ala.1990). It does not depend, as Winnebago contends, upon whether Winnebago intended for its Chieftain to be operated by a paraplegic with no sensation to heat in his feet. The proper question in this case is whether it was foreseeable for any person to be burned while operating the Chieftain.
 
 
 15
 As we have already described, Goree's expert witnesses testified that the Winnebago's floorboard temperatures climbed to levels sixty-five degrees higher than the minimum necessary to burn the feet of any human being. Dr. Behringer offered his opinion that the amount of time and degree of temperature required to cause a burn is the same for both paraplegics and people with normal sensation to heat. This evidence is sufficient for a reasonable jury to find that even a person with normal sensitivity in their feet could foreseeably have been burned by the excessive heat emanating from the Chieftain's floorboard. Based upon this testimony, we conclude that the district court improperly weighed the evidence when it held that Goree could not as a matter of law be an ordinary consumer of the Winnebago. A reasonable jury could find from the evidence presented thus far that any person might have been burned by the Chieftain's floorboard temperatures.
 
 
 16
 Additionally, Winnebago's argument that it does not manufacture motor homes for operation by paraplegics and never intended for the Chieftain to be operated by a person whose feet were not sensitive to heat raises the question of whether Goree was guilty of contributory negligence in his use of the product rather than whether he is an ordinary consumer. Because the AEMLD retains fault as the gravamen of an action against a manufacturer who sells a product that is unreasonably dangerous when put to its intended use, the defendant manufacturer may assert the affirmative defenses of lack of causal relation, assumption of the risk, and contributory negligence. Brownlee, 641 F.2d at 400 (citing Casrell, 335 So.2d at 143). The defendant bears the burden of proving contributory negligence by showing that the plaintiff (1) had knowledge of the dangerous condition, (2) appreciated the danger under the surrounding circumstances, and (3) acted unreasonably given his knowledge and appreciation. Caterpillar Tractor Co. v. Ford, 406 So.2d 854, 857 (Ala.1981).
 
 
 17
 The plaintiff's use of a product in a manner not intended by the manufacturer provides a basis for the defense of contributory negligence. See Brownlee, 641 F.2d at 400. This is normally a jury question, and "the Court must be careful not to construe the phrase ["intended use"] so strictly as to actually resolve questions of contributory negligence or assumption of the risk without submitting those issues to the jury." Brownlee, 641 F.2d at 400 (citing General Electric Co. v. Mack, 375 So.2d 452, 456 (Ala.1979)). Winnebago contends that Goree misused the Chieftain because he operated the vehicle continuously for six hours while wearing only socks on his feet. It states that a person with normal sensation to heat would have sensed the rising floorboard temperatures and moved their feet before being burned. These allegations ignore whether Goree knew that the Chieftain's floorboard temperatures could rise to dangerously high levels during periods of extended operation and appreciated that danger under the surrounding circumstances. We therefore conclude that Winnebago has not shown the lack of a dispute concerning whether Goree was guilty of contributory negligence in his use of the motor home under the surrounding circumstances.
 
 C.
 
 18
 The third element of the plaintiff's prima facie case under the AEMLD requires a plaintiff to establish that the product "was expected to, and did, reach the user without substantial change in the condition in which it was sold." Banner Welders, Inc. v. Knighton, 425 So.2d 441, 450 (Ala.1982) (quoting Atkins v. American Motors Corp., 335 So.2d 134, 141 (Ala.1976)). This examination is tied to proximate cause. The question is whether the plaintiff's "injuries were proximately caused by a defect in the product as manufactured and sold, or by a defect created by the alteration by the user or a third party." Banner Welders, 425 So.2d at 451 (quoting Frederick E. Fleder, Annotation, Products Liability: Alteration of Product After It Leaves Hands of Manufacturer or Seller As Affecting Liability for Product-Caused Harm, 41 A.L.R.3d 1251, 1253 (1972)). Standing alone, the fact that a product has been changed is not enough as a matter of law to relieve the manufacturer of liability. The manufacturer can still be liable for the plaintiff's injuries if there is sufficient evidence that the injuries were not caused by the modification to the product. Johnson v. Niagara Machine and Tool Works, 555 So.2d 88, 91 (Ala.1989).
 
 
 19
 The hand controls that Goree installed enabled him to operate the Chieftain when he would not otherwise have been able to do so. However, there is no evidence in the record that the modification played any part in creating or aggravating the Chieftain's defective heating problem, or that it was the cause of Goree's injuries. A non-paraplegic might also have been burned even without the installation of hand controls. Thus, the mere fact that hand controls were installed cannot be characterized as a matter of law as the proximate cause of Goree's injuries. We therefore hold that the district court decided the issue of substantial modification prematurely, and that it should be left for the jury to decide.
 
 III.
 
 20
 Goree also contends on appeal that Winnebago was under a duty to warn consumers of the Chieftain of the risk of injury occasioned by the excessive floorboard temperatures. The district court did not address this issue, which was raised in Goree's complaint, and consequently the duty to warn did not enter into its consideration of the grant of summary judgment. We therefore do not reach this claim on appeal since it does not affect the outcome of our decision.
 
 CONCLUSION
 
 21
 In summary, we conclude that Goree has presented sufficient evidence to establish the existence of the elements of his prima facie case under the AEMLD. Accordingly, we REVERSE the district court's grant of summary judgment and entry of final judgment in favor of Winnebago, and REMAND for further proceedings consistent with this opinion.
 
 
 
 *
 See Rule 34-2(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit