FEDERAL DEPOSIT INSURANCE CORPORATION, as Manager of the FSLIC Resolution Fund, Plaintiff,

v.

Daniel N. MARTIN, Ronald R. Richmond, Stephen C. Booth, J. Harris Cook, Gerald A. Figurski, and Sharon Taylor, et al., Defendants.

No. 90–409–CIV–T–17B.

United States District Court,
M.D. Florida,
Tampa Division.

Sept. 29, 1992.

ual Motion for Final Summary Judgment filed on June 15, 1992; and Defendants Martin, Richmond, Booth, Cook, Figurski, and Taylor's Motion for Summary Judgment also filed on June 15, 1992. Because the cause of action and ensuing motions stem from the same set of facts, the Court will address the motions concurrently. For purposes of this Order, however, the Court will first address Defendants' Richmond, Booth, and Cook's Motion for Final Summary Judgment followed by the Motion for Summary Judgment By All Defendants.

In the complete absence of genuine issues of material fact to support the allegations of a plaintiff, the defendant is entitled to summary judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317; 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The Eleventh Circuit clearly holds that the party moving for summary judgment bears the initial burden of showing the lack of a genuine issue of material fact. *Goree v. Winnebago Industries, Inc.,* 958 F.2d 1537 (11th Cir.1992) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). All doubt as to the existence of a genuine issue of material fact must be resolved against the moving party without first weighing the probative value of the evidence. *Hayden v. First National Bank of Mt. Pleasant,* 595 F.2d 994 (5th Cir.1979).

### I. RICHMOND, BOOTH, AND COOK

Plaintiff, the Federal Deposit Insurance Corporation ("FDIC"), as manager of the FSLIC Resolution Fund, brought the instant suit against the former law firm of Martin, Richmond, Booth, Cook & Figurski (the "Martin Firm"). Defendants Richmond, Booth, and Cook terminated their partnership with the Martin Firm on July 20, 1984. The FDIC has alleged that the Martin Firm committed legal malpractice by failing to disclose material loan information to their client Liberty Savings & Loan Association of New Port Richey ("Liberty"). Specifically, the Plaintiff maintains that the Martin Firm neglected to disclose

Henry A. Stein, Rudnick & Wolfe, Tampa, Fla., for plaintiff.

Cynthia Zellner MacKinnon, Russell Knighton Dickson, Jr., Lora A. Dunlap, Fisher, Rushmer, Werrenrath, Keiner, Wack & Dickson, P.A., Orlando, Fla., for defendants.

### ORDER DENYING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

KOVACHEVICH, District Judge.

This cause is before the Court on Defendants Richmond, Booth, and Cook's individ-

to Liberty the outstanding debts of potential loan recipients before Liberty's loan committee approved the transactions. Plaintiff alleges that Richmond, Booth, and Cook knew about these liabilities as members of the Martin Firm yet failed to disclose them to Liberty. Plaintiff further maintains that as a result of the Martin Firm's breach of fiduciary duty to its client Liberty, all of the loans fell into default and damaged Liberty in excess of two million dollars. Liberty subsequently became insolvent and was placed in a FSLIC receivership on May 15, 1987.

Although Liberty did not engage the Martin firm as underwriter for potential loans, the loan committee frequently asked the attorneys attending loan committee meetings if they had any personal knowledge of the credit worthiness of a prospective borrower. Members of the loan committee have stated that they relied upon this information when making decisions for approval of potential loans. Defendants, however, dispute the Plaintiff's characterization of the scope of representation and the times that they were still actually retained by Liberty. Loan committee members have further testified that Liberty would not have approved the loans had they known the information that Defendants Richmond, Booth, and Cook allegedly concealed.

The first disputed loan transaction took place in the beginning of 1984. S & K Development Company ("S & K") requested seven different loans from Liberty in order to develop a construction project known as Spring Haven. The savings and loan approved five loans totalling over $2.2 million dollars payable to S & K. The first of these loans was for $696,000. On July 17, 1984, Sharon Taylor of the Martin Firm attended the Liberty loan committee's approval meeting for this first loan. Defendants Richmond, Booth, and Cook split off from the Martin Firm three days later on July 20. Liberty sent a loan commitment letter on July 27, 1984. Liberty then disbursed the loan to S & K on September 20, 1984.

Defendants were aware of the existence of S & K before the loans came before Liberty's loan committee. In fact, the Martin Firm had performed the legal incorporation of S & K in 1982 and handled all of its early legal work. S & K negotiated in early 1983 for the purchase of farmland in Pasco County that would form Spring Lake. Defendant Richmond allegedly dealt at length with the sellers of the property, Elmer and Audrey Manos. A disputed question of material fact involves Richmond's allegedly informing Audrey and Elmer Manos of the risk of conveying their property to S & K without adequate security for repayment. Richmond also allegedly disclosed to his law partners Martin and Booth the terms of the purchase between Elmer and Audrey Manos and S & K. Armed with this knowledge, the Martin Firm allegedly declined to take part in the transaction.

Plaintiffs further allege that in early 1984 when Defendants Richmond, Booth, and Cook were still with the Martin Firm, the Firm knew about several material problems with the S & K loan. One of these problems was the $573,800 owed to Elmer and Audrey Manos as the unpaid balance of the purchase price of the land where Spring Haven was to be constructed. This unsecured balance represented approximately 99% of the purchase price. Another fact allegedly known by the Martin Firm before July 20, 1984 involved the eight million dollar default by P.G. International, Inc., the ostensible purchaser of 166 units to be built at Spring Haven. Further, the Martin Firm allegedly concealed on Department of Housing and Urban Development closing sheets a down payment made by a "straw man." Plaintiff claims that had any of this information been disclosed to Liberty by their attorneys, the Martin Firm, the loans would never have been made.

Defendants Richmond, Booth and Cook maintain that they provided no legal services to Liberty and retained no financial interest in any attorney's fees associated with the disputed loan transactions. However, if the Martin Firm did, in fact, breach their reasonable duty to Liberty by conceal-

ing material information about the loan transactions before July 20, 1984, Defendants would still be liable for legal malpractice. A mixed question of law and fact remains to be resolved concerning the actual harm later proximately caused Liberty by this alleged non-disclosure.

A key issue here, and a genuine issue of material fact precluding summary judgment, involves the extent to which Sharon Taylor, as representative of the Martin Firm, received instruction or information from the Defendants in dealing with the Liberty loan committee. Deposition testimony presented by Plaintiff indicates that she knew or should have known about the debt. Defendants maintain that Taylor had no such knowledge. Thus, Taylor's knowledge or lack of knowledge of the Manos debt and other potentially material information is not a matter that the Court can properly address at summary judgment.

Material fact disputes precluding summary judgment include Defendants Richmond, Booth, and Cook's actual knowledge of the Manos and S & K transactions. Tangent to this issue is the scope of the role played by the Martin Firm in advising Liberty in loan transactions before July 17, 1984. Once the fact finder explores this avenue of inquiry, the question must be answered about Liberty's reliance on supposedly concealed loan information *after* July 20, 1984.

Therefore, disputed issues of material fact preclude summary judgment of the charge of legal malpractice against Richmond, Booth, and Cook.

## II. ALL DEFENDANTS

The FDIC also sued the members of the Martin Firm collectively for legal malpractice and breach of fiduciary duty for causing Liberty to suffer substantial monetary damages arising from loan losses. In addition to the first loan for $696,000, Liberty approved four other loans to S & K totally over 2.2 million dollars. Another loan in the sum of $78,000 was made to Kay Norrington and Sandra Luscombe, the principals of S & K. The seventh transaction involved six end loans totalling $354,600 to Norman Eugene Watson and Patricia Watson for the purported purchase of six units at Spring Haven.

■ The elements of a legal malpractice cause of action are the attorney's employment and his neglect of a reasonable duty which proximately causes a loss to his client. *Thompson v. Martin*, 530 So.2d 495 (Fla. 2d DCA 1988); *Weiner v. Moreno*, 271 So.2d 217 (Fla. 3d DCA 1973). Further, a lawyer has an implicit duty to inform the client of matters material to representation. *Dykema v. Godfrey*, 467 So.2d 824 (Fla. 1st DCA 1985).

■ The attorney client relationship does, as Plaintiff maintains, place a fiduciary duty on the part of the attorney. *Armour & Co. v. Lambdin*, 154 Fla. 86, 16 So.2d 805 (1944). A person acting in a fiduciary or confidential capacity has a duty to make a full and fair disclosure of material facts to a person reposing confidence in him. *Don Slack Insurance, Inc. v. Fidelity & Casualty Co. of New York*, 385 So.2d 1061, 1064 (Fla. 5th DCA 1980); *Young v. Field*, 548 So.2d 784 (Fla. 4th DCA 1989); *Kline v. Pyms Suchman Real Estate Co.*, 303 So.2d 401 (Fla.3d DCA 1974), *cert. denied*, 314 So.2d 588 (Fla. 1975).

■ Once again, Plaintiff alleges that Defendants neglected both their fiduciary duty to their client Liberty and their reasonable duty as attorneys by failing to disclose material information that the firm had concerning several loan transactions. Specifically, Plaintiff charges that the Martin Firm committed malpractice by failing to disclose S & K's unpaid obligation of $573,800 to Audrey and Elmer Manos, the default of the $8 million dollar PG contract for 166 units at Spring Haven, and the lack of down of payment by the Watsons in a purchase of six units at Spring Haven.

Defendants refute the charge of actual knowledge of the Manos debt by claiming in their motion that the record does not contain any evidence which would tend to impute actual knowledge on the part of the Martin Firm. This Court disagrees. The Martin Firm represented S & K for a peri-

od of time in the early 1980's. Members of the Martin Firm did communicate with Audrey and Elmer Manos concerning the sale of their land to S & K several years before the transactions which brought the instant lawsuit. At the very least, a genuine issue of material fact remains regarding the firm's knowledge of the circumstances surrounding the Manos debt. The conflicting testimony creates a question of fact and liability which cannot be determined at summary judgment.

The circumstances surrounding the PG contract and the Watson transactions are similarly disputed. Essentially, both parties present conflicting testimony as to the propriety of the transactions and the Martin Firm's knowledge of them. Further, a material conflict in testimony exists concerning the scope of the Martin Firm's representation of Liberty during all of the S & K loan approvals.

Therefore, the persistence of the above stated and other material facts precludes the granting of summary judgment. Accordingly, it is

ORDERED that the Motion for Final Summary Judgment by Defendants Richmond, Booth and Cook is hereby denied.

ORDERED that the Motion for Summary Judgment by all Defendants is hereby denied.

ORDERED that the motions for oral argument above motions for summary judgment be, and hereby are, denied.

DONE and ORDERED.