Plaintiffs, Jimmie Entrekin and his wife, Charlene Entrekin,[1] appeal from a JNOV (judgment notwithstanding the verdict) in favor of the defendant, Atlantic Richfield Company, in this action to recover damages for personal injuries. We affirm.
The following material facts are not in dispute. The plaintiff, a motor inspector whose responsibilities included maintenance and repair of machinery, had been employed at Republic Steel Company in Gadsden for 18 years. While attempting to lubricate an overhead crane, he suffered severe injuries to his hands when they *Page 448 
were pulled into the moving gears of the crane.
As a member of a specialized crew known as the "bull gang," the plaintiff worked throughout Republic Steel's plant, assisting wherever he was needed. On the day of his injury, his crew had been assigned the task of replacing a worn gear on an overhead crane. After the worn gear had been replaced, the plaintiff attempted to lubricate the new gear by applying a lubricant known by the employees of Republic Steel as "gear shield." Gear shield is a sticky substance, sold by the defendant under the trade name "Jet-Lube." Jet-Lube is sold in drums, five-gallon buckets, and one-pound clear plastic packets. The Jet-Lube used by the plaintiff in this case was contained in plastic packets.
These plastic packets were manufactured so that they could be placed, unopened, onto the gears. The plastic was made to be ground up by the movement of the gears and to dissolve in the Jet-Lube. Because it is not necessary for the packet to be opened, the defendant considered Jet-Lube to be clean, convenient, and safe. The defendant sold the Jet-Lube to Republic Steel without mentioning the fact that the plastic packets would not harm moving gears and, therefore, could be dropped, unopened, onto them.
Prior to the plaintiff's injury, it was customary for the employees of Republic Steel to repair a crane's gears and then to lubricate them by using several different methods: 1) by dropping a packet of Jet-Lube, unopened, onto the gears; 2) by cutting a packet of it open and squeezing it onto the gears; and 3) by cutting a packet of it open, squeezing it into a bucket, heating it, and pouring it onto the gears. The plaintiff had been instructed by a supervisor to apply Jet-Lube by using the second method.
At the time he was injured, the plaintiff was attempting to lubricate the crane while it was operating. The protective shield that covered the crane's moving gears had an opening in the top of it, through which the gears could have been lubricated; however, that protective shield had been removed. The plaintiff reached too close to the moving gears and the packet became entangled in them, pulling his hands into the "nip-point" (i.e., the area between two in-running gears facing a workman). The record indicates that the lubrication procedure being used by the plaintiff at the time of his injury, although not proper, was not unusual.[2] Furthermore, the record shows that it was customary during the repair of the cranes for employees of Republic Steel to lubricate the gears while the gears were moving and with the protective shield removed.
The plaintiff brought suit, alleging that the defendant was in the business of manufacturing, marketing, packaging, or selling Jet-Lube and that, under the Alabama Extended Manufacturer's Liability Doctrine (AEMLD), the Jet-Lube was defective because of a lack of instructions. The plaintiff further alleged that he was injured as a result of that alleged defect. The case was tried before a jury; however, when the jury could not reach a verdict, the trial *Page 449 
judge declared a mistrial. The defendant was subsequently granted a JNOV.[3]
The plaintiff contends that questions of fact exist as to whether the defendant is liable under the AEMLD; therefore, he argues that the defendant was not entitled to a JNOV. The defendant argues that, as a matter of law, the Jet-Lube used by the plaintiff was not defective within the meaning of the AEMLD. The defendant also argues that the undisputed evidence shows that the plaintiff was contributorily negligent and, thus, is barred from any recovery. For the following reasons we hold, as a matter of law, that the Jet-Lube used by the plaintiff in this case was not defective within the meaning of the AEMLD; consequently, we pretermit any discussion of the contributory negligence issue.
Under the AEMLD, a manufacturer, supplier, or seller who markets a product not reasonably safe when applied to its intended use in the usual and customary manner, is negligent as a matter of law. In other words, the fault or negligence of the defendant is that he has conducted himself in a negligent manner by placing on the market a product that causes personal injuries or property damage when put to its intended use. As long as there is a causal relationship between the defendant's conduct and the defective product, liability may attach, because an unreasonable risk of harm has been created. Liability — subject to allowable defenses (e.g., lack of causal relation, contributory negligence, assumption of the risk) — attaches solely because the defendant has exposed users of a product to unreasonable risks.Casrell v. Altec Industries, Inc., 335 So.2d 128 (Ala. 1976);Atkins v. American Motors Corp., 335 So.2d 134 (Ala. 1976).
In Casrell, the Court set out the elements of a cause of action under the AEMLD:
"To establish liability, a plaintiff must show:
 "(1) He suffered injury or damages to himself or his property by one who sells a product in a defective condition unreasonably dangerous to the plaintiff or the ultimate user or consumer, if
 "(a) the seller is engaged in the business of selling such a product, and
 "(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.
 "(2) Showing these elements, the plaintiff has proved a prima facie case although
 "(a) the seller has exercised all possible care in the preparation and sale of his product, and
 "(b) the user or consumer has not bought the product from, or entered into any contractual relation with, the seller." 335 So.2d at 132-33.
A defect within the meaning of the AEMLD is that which renders a product unreasonably dangerous. Ordinarily, whether a product is unreasonably dangerous is for the trier of fact, just as negligence, vel non, normally is in a traditional negligence case. Casrell; Atkins. See also Alabama Pattern JuryInstructions (Civil) 32.12 and the comments thereto.
Our standard of review in this case was well stated inDeaton, Inc. v. Burroughs, 456 So.2d 771 (Ala. 1984):
 "It is axiomatic that a motion for directed verdict and its corollary motion for judgment notwithstanding the verdict *Page 450 
objectively test the sufficiency of the evidence:
 " '[U]nder our system, the jury must be allowed to pass on the evidence if any, no matter how slight, is offered, which, if believed, would support a verdict in favor of the party against whom a directed verdict is sought.'
 "Herston v. Whitesell, 374 So.2d 267, 270 (Ala. 1979). See also Rule 50, A.R.Civ.P., and Casey v. Jones, 410 So.2d 5, 7 (Ala. 1981).
 "A directed verdict is proper only where there is a complete absence of proof on a material issue or where there are no controverted questions of fact on which reasonable people could differ. See Caterpillar Tractor Co. v. Ford, 406 So.2d 854 (Ala. 1981)."
456 So.2d at 775.
The dispositive issue in this case is whether there is any evidence tending to show that the Jet-Lube sold by the defendant to Republic Steel was unreasonably dangerous and, thus, defective under the AEMLD.
Jet-Lube itself is not defective. However, because Jet-Lube is marketed in packets without any instructions, users, such as the plaintiff, are not told how to apply it. Prior to the plaintiff's injury, it was customary during the repair process for employees of Republic Steel to apply Jet-Lube 1) by dropping a packet of it, unopened, onto exposed, moving
gears; 2) by cutting a packet of it open and squeezing it ontoexposed, moving gears (the method being used by the plaintiff at the time of his injury); and 3) by cutting a packet of it open, squeezing it into a bucket, heating it, and pouring it onto exposed, moving gears. It is quite evident from the record that the defendant's product was being misused. The question then is, in light of this misuse, whether the absence of instructions presented a fact question as to the dangerousness of the product. We think the answer to this question is "no," unless there is evidence tending to show that a user of the product, such as the plaintiff, could not be safely entrusted with it as marketed. In the present case, the plaintiff had reached the age of discretion and was in possession of his mental faculties. Although the plaintiff was not instructed that the plastic packets would not damage moving gears (and the plaintiff could certainly not have been expected to know that), there is simply no evidence tending to show that the alternative methods available to the plaintiff for applying the Jet-Lube were unreasonably dangerous if used in a manner deemed safe within the industry[4] (see OSHA regulations, n. 2). The use of certain products is so firmly grounded in common sense as to require no specific instructions or warnings. The defendant's failure to warn the plaintiff in this case of the open and obvious danger of lubricating the exposed, moving gears of a crane, did not render the product defective. A warning is to inform the user of a danger of which he is not aware. GeneralElec. Co. v. Mack, 375 So.2d 452 (Ala. 1979).[5] Furthermore, not knowing for sure whether the plastic packet would harm moving gears, the plaintiff had the option of either: 1) shutting the crane down, cutting a packet open, and squeezing the Jet-Lube onto the exposed gears (or heating it and pouring it onto the exposed gears), or 2) leaving the crane running, cutting a packet open, and squeezing the Jet-Lube through the opening in the protective shield (or heating it and pouring it through that opening). Neither of these alternative methods was unreasonably dangerous. *Page 451 
Because the plaintiff did not prove that the Jet-Lube sold by the defendant was defective within the meaning of the AEMLD, the trial judge did not err in granting the defendant a JNOV.
AFFIRMED.
TORBERT, C.J., and MADDOX, BEATTY and STEAGALL, JJ., concur.
[1] Charlene Entrekin claimed damages for loss of consortium; therefore, because her claim is merely derivative of her husband's, all further references in the opinion to the "plaintiff" are to Jimmie Entrekin.
[2] An applicable Federal regulation reads as follows:
 "(1) Maintenance — Preventive maintenance program based on the crane manufacturer's recommendations shall be established.
 "(2) Maintenance procedure. Before adjustments and repairs are started on a crane the following precautions shall be taken:
 "(a) The crane to be repaired shall be run to a location where it will cause the least interference with other cranes and operations in the area.
"(b) All controllers shall be at the off position.
 "(c) The main or emergency switch shall be open and locked in the open position.
 "(d) Warning or 'out of order' signs shall be placed on the crane, also on the floor beneath or on the hook where visible from the floor.
 "(e) Where other cranes are in operation on the same runway, rail stops or other suitable means shall be provided to prevent interference with the idle crane.
 "(ii) After adjustments and repairs have been made the crane shall not be operated until all guards have been reinstalled, safety devices reactivated and maintenance equipment removed."
Occupational Safety and Health Admin., Labor,29 C.F.R. § 1910.179 (1986).
[3] Rule 50(b), Ala.R.Civ.P. provides, in pertinent part, as follows:
 "Whenever a motion for a directed verdict made at the close of all the evidence is denied or for any reason is not granted, the Court is deemed to have submitted the action to the jury subject to a later determination of the legal questions raised by the motion. Not later than 30 days after entry of judgment, a party who has moved for a directed verdict may file a motion to have the verdict and any judgment entered thereon set aside and to have judgment entered in accordance with his motion for a directed verdict; or if a verdict was not returned, such party, within 30 days after the jury has been discharged, may file a motion for judgment in accordance with his motion for a directed verdict." (Emphasis added)
Thus, the "JNOV" granted in this case might more properly be referred to as a judgment entered in the absence of a verdict.
[4] The plaintiff introduced expert testimony to the effect that Jet-Lube fell below the industry standard for instructions; however, the plaintiff's experts did not testify that the lack of instructions rendered the product unreasonably dangerous.
[5] Whether a danger was "open" and "obvious" does not go to the issue of the duty of the defendant under the AEMLD. Instead, "open" and "obvious" danger relates to the affirmative defense of assumption of risk, the alleged "defectiveness" of theproduct, and the issue of causation. See Ford Motor Co. v.Rodgers, 337 So.2d 736 (Ala. 1976), and the comments to AlabamaPattern Jury Instructions (Civil) 32.17 and 32.18. Although the plaintiff testified that he did not think he would get hurt, the record is clear that he knew that the method he was using to lubricate the crane was dangerous.