Max **MOTLEY**, Plaintiff,

v.

**BELL HELICOPTER TEXTRON, INC.**, Defendant.

Civ. A. No. 94–D–882–S.

United States District Court, M.D. Alabama, Southern Division.

July 3, 1995.

---

250

Roger L. Lucas, Leigh Ann King, Birmingham, AL, for plaintiff.

John R. Matthews, Jr., Montgomery, AL, for defendant.

## MEMORANDUM OPINION

DE MENT, District Judge.

This matter is now before the court on the defendant Bell Helicopter Textron, Inc.'s (hereafter "Bell Helicopter") motion for summary judgment, filed March 31, 1995. The plaintiff, Max Motley, responded to Bell Helicopter's motion for summary judgment on May 9, 1995. For the reasons set forth below, the motion is due to be granted.

### Jurisdiction

The court has jurisdiction over this matter pursuant to 28 U.S.C. Section 1332.

### Factual Background

The plaintiff, Max Motley, was employed from 1988 through 1992 as an aircraft mechanic for the DynCorp Corporation. DynCorp mechanics are under contract with the Army to perform maintenance work on military aircraft that are located at Fort Rucker. Motley served as a maintenance crew leader and, among other things, was responsible for maintenance work on UH–1H "Huey" helicopters.

On August 12, 1992, Motley was seriously injured while performing maintenance work on one of the Huey helicopters. The incident occurred while Motley was atop the fuselage of the aircraft making adjustments to the transmission oil pressure relief valve. The pressure relief valve is a device located a few feet below the "swash plate" which is connected to the helicopter's main rotor mast. At the time of the accident, the helicopter's engine was operating at approximately 6600 revolutions per minute and the swash plate and rotor blades were also turning at a high rate of speed. As the plaintiff adjusted the pressure relief valve, he was inadvertently struck in the head by the rotating swash plate and was thrown from the helicopter.

Following his injury, Motley filed suit against Bell Helicopter alleging a cause of action under the Alabama Extended Manufacturer's Liability Doctrine (hereafter "AEMLD"). Motley claims that the Huey helicopter was defective because the maintenance manual that accompanied it did not adequately warn of the dangers associated

with working around the rotating swash plate when the engine was on.[1]

### Summary Judgment Standard

Summary judgment can be entered on a claim only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The Supreme Court has stated:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In further elaboration on the summary judgment standard, the Court has said that "there is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (citations omitted). Summary judgment is improper "if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248, 106 S.Ct. at 2510. *See also Barfield v. Brierton,* 883 F.2d 923, 933 (11th Cir.1989). The court is to construe the evidence and all factual inferences arising from it in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970).

### Discussion

"Under the Alabama Extended Manufacturers Liability Doctrine ("AEMLD"), the plaintiff must prove that the product was defective. *Entrekin v. Atlantic Richfield Co.,* 519 So.2d 447, 449 (Ala.1987). A product is defective if it is marketed without a warning and is unreasonably dangerous when used as intended unless the danger is open and obvious or known by the plaintiff. *Id.* See *Casrell v. Altec Indus.,* 335 So.2d 128, 132–33 (Ala.1976).

*Gean v. Cling Surface Co.,* 971 F.2d 642 (11th Cir.1992).

In his complaint, Motley contends that the helicopter in question was a defective product under the AEMLD because the maintenance manual that was provided to mechanics did not contain proper warnings and instructions for those attempting to adjust the Transmission Oil Pressure Relief Valve. More specifically, he contends that the manual's instruction to adjust the valve while the engine was operating was dangerous, because it required the mechanic to work in close proximity to the rotating swash plate.

In response, Bell Helicopter argues that it cannot be held liable for the plaintiff's injuries for two reasons. First, the maintenance manual in question was produced, edited, approved and published by the United States Army without the aid of Bell Helicopter. The specific language in the manual which directed mechanics to adjust the pressure relief valve with the engine running was inserted by Army technical experts and was never a requirement in a Huey maintenance manual that Bell Helicopter was involved with. Secondly, the defendant contends that the instructions that were contained in the manual did not render the product defective because the hazard associated with working around the rotating swash plate was "open and obvious" to any reasonable person. According to the defendant, the rotating swash plate was highly visible, and any beginning mechanic would instantly recognize that it would be foolish to adjust the pressure relief valve without exercising due care. The court

---

**1.** The plaintiff does not contend that the subject UH–1H helicopter was defectively designed or manufactured. *Plaintiff's Brief,* p. 21.

will address the defendant's two arguments in favor of summary judgment separately.

### The UH–1H Maintenance Manual

■ The UH–1H "Huey" helicopter is a utility aircraft that began as an experimental model in the mid–1950's. In 1959, the Huey was in active service for the Army Air Corps. The aircraft later served as the United States Army's principal helicopter during the Vietnam conflict. The Huey is still in service today. The particular helicopter involved in this case was delivered to the Army on June 6, 1967. *Deposition: Max McCrary*, p. 8.

On June 27, 1975, the Army entered into a contract with Bell Helicopter under which Bell agreed to assist the Army in consolidating five technical manuals for the Huey into three basic service manuals. The project was guided by specifications established by the Army and set forth in the contract. One of the three manuals that was produced under this agreement was entitled "Aviation Unit and Intermediate Maintenance Instructions for the UH–1H Helicopter, TM 55–1520–210–23–1." The manual was dated February 20, 1979 (hereafter "the 1979–23 Manual"). Section 6–74 of the 1979–23 Manual provided instructions for the adjustment of the transmission oil pressure relief valve. Section 6–74 of the 1979–23 Manual states the following:

> "6–74. **Adjustment—Pressure Relief Valve.** a. Back off jamnut on end of adjusting screw of pressure relief valve (16. figure 6–19).
>
> b. Turn adjusting screw clockwise to increase or counter clockwise to reduce indicated oil pressure. Adjust to 50 psi and tighten jamnut."

(emphasis in original).[2]

Bell Helicopter's involvement in the preparation of the 1979–23 Manual was closely monitored by Army Technical Advisors. The Army studied and reviewed the publication on a line by line basis and required numerous changes in the preliminary drafts. Final approval for the 1979–23 Manual was given by

the Army in April of 1978, following a lengthy conference with Bell Technical Publication employees.

On September 30, 1987, the Army issued a new manual which superseded the 1979–23 manual that was produced with the assistance of Bell Helicopter. The 1987–23 Manual was produced entirely under the direction of the Army without the advice or input of Bell Helicopter. The new manual revised Section 6–74 by requiring that adjustments to the transmission oil pressure relief valve be made with the helicopter's engine running. The text of Section 6–74 of the 1987–23 manual states in part:

> "6–74. **Adjustment—Pressure Relief Valve.**
>
> a. Loosen nut (2, figure 6–22.3) while holding setscrew to prevent pressure change.
>
> b. *Start engine (Maintenance Test Pilot only)* (TM 55–1520–210–10 or TM 55–1520–247–10) and *operate until engine and transmission oil temperatures stabilize within normal ranges.*"

(emphasis supplied).

As stated previously, Motley alleges that Bell Helicopter is liable under the AEMLD because the instruction manual provided to him failed to include proper warnings and instructions regarding adjustments to the pressure relief valve while the engine was running. Yet, the court finds that Motley received his technical instructions regarding this procedure from an Army Manual, not a Manual produced by Bell Helicopter. The instruction contained in Section 6–74 of the 1987–23 Manual was in effect at the time of Motley's injury. The uncontroverted evidence in this case shows that Bell had no input whatsoever in the publication of the 1987–23. The Army simply undertook the entire task of providing warnings and instructions to Huey mechanics like Motley. While the Army had every right to do so, the court finds that the act of actually doing so relieved Bell of any liability stemming from

---

**2.** As is readily apparent, Section 6–74 of the 1979–23 Manual is silent as to whether the engine should be running during this procedure. However, at that time, it was generally known that adjustments of that kind were to be done without power ("engine off") unless the manual specifically directed the mechanic to do so under power. *Deposition: Shirley Hart*, P. 29.

defects in the new Section 6–74. Thus, without even passing on the question of whether the instructions issued to Motley rendered the Helicopter in question defective, the court finds that Bell Helicopter is entitled to summary judgment. "A contractor should not be held liable for deficiencies in the contents of a maintenance manual if the contents are dictated by the government." *Nicholson v. United Technologies Corp.*, 697 F.Supp. 598, 604 (D.Conn.1988).

### Open and Obvious Danger

■ Even if the provisions of Section 6–74 were attributable to the defendant, the court would still be compelled to grant the defendant's motion for summary judgment. The court finds that regardless of authorship or responsibility, the instructions concerning the pressure relief valve did not render the product defective. The facts of this case establish that the hazards associated with working in close proximity to the rotating swash plate were "open and obvious" to any reasonable person.

The Alabama Supreme Court has recognized that "openness" and "obviousness" are an integral part of the inquiry into proximate causation. *Entrekin v. Atlantic Richfield Co.*, 519 So.2d 447, n. 5 (Ala.1987). "In determining whether a danger is open and obvious it is relevant to examine whether it would be commonly known that the condition was dangerous." *Gean v. Cling Surface Co.*, 971 F.2d 642, 649 (11th Cir.1992).

"Some products, by their nature, (or, in modern parlance, by their conscious design), place both users and bystanders in some measure of danger. A knife or an axe may cut persons, as well as their intended targets. Fish hooks can wound; saws can maim, and revolving propellers can cause fearful damage. Yet as the Georgia Court of Appeals noted in *Stovall & Co. v. Tate*, 124 Ga.App. 605, 184 S.E.2d 834, 838 (1971), we do not hold manufac-

turers liable simply because the use of their products involves some risk:

'To illustrate, the manufacturer who makes, properly and free of defects, an axe or a buzz saw or an airplane with an exposed propeller, is not to be held liable if one using the axe or the buzz saw is cut by it, or if someone working around the airplane comes in contact with the propeller.' "

*Elliott v. Brunswick Corp.*, 903 F.2d 1505, 1507 (11th Cir.1990). (emphasis supplied).

It is difficult to conceive of a more open and obvious hazard than that presented by the rotating blades and swash plate of a helicopter. Out of necessity, the rotor mast of a helicopter, and the appendages attached thereto are completely exposed, and cannot escape the notice of even a casual observer. No reasonable person would need to be told that caution should be exercised when working in close proximity to those components of a helicopter. Certainly, a trained mechanic would not require such a warning.

The plaintiff's failure to act in a prudent manner around the rotating swash plate was the proximate cause of his injuries. Motley failed to follow standard maintenance procedure when he chose to adjust the pressure relief valve while directly atop the aircraft. Army trained mechanics are taught to make that adjustment while standing on the right hand engine deck, not the roof of the aircraft.[3] Motley however, elected not to follow standard procedure in this instance.

The court has no doubt that Motley was probably operating under the constraints of time when he chose to disregard the danger associated with performing the adjustment so close to the exposed swashplate. However, it was abundantly clear that it was dangerous to do so. Any rational person would have recognized that fact. For this reason, Motley cannot hold Bell Helicopter liable for failing to warn him of a hazard that was so "open and obvious."

---

**3.** According to the deposition testimony of Michael McCurdy, an instructor and evaluator of Army Maintenance Test Pilots for the Army's Department of Standardization, a mechanic standing on the engine deck would be able to adjust the pressure relief valve without risk of being injured by the rotating swashplate. A mechanic performing that same procedure on the roof of the aircraft would be placing himself in great danger of being struck. *Deposition: Michael McCurdy*, pgs. 42–44.

### Conclusion

In sum, the defendant's motion for summary judgment is due to be granted. A judgment in accordance with this opinion shall be entered separately.